

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00373-CV

HAP HOUCHIN, APPELLANT

V.

MENDY RAE HOUCHIN, APPELLEE

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 11-12-22880, Honorable Pat Phelan, Presiding

May 31, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Hap Houchin, challenges a protective order entered in favor of appellee, Mendy Houchin, and her daughter, Whitney Houchin. By his issues, Hap challenges the legal and factual sufficiency of the evidence to support the trial court's conclusions that he had committed family violence against Mendy and Whitney and that Hap is likely to commit family violence in the future. Further, Hap contends that findings of fact entered by the trial court are not supported by the evidence. We disagree and will affirm the judgment of the trial court.

Factual and Procedural Background

Hap and Mendy were divorced following a ten-year marriage. In 2012, their son committed suicide. On the day the son was buried on property belonging to Hap's father, Dan Houchin, both Hap and Mendy and their daughter, Whitney, were at Dan's residence. Hap was drinking heavily most of the afternoon and evening. Sometime in the evening hours, Hap and Mendy left Dan Houchin's home to acquire a set of lights to put over their son's grave. Eventually, Hap and Mendy stopped at Hap's residence. While at Hap's residence, Hap continued to drink and made several telephone calls to his father. During these calls, Hap appeared to enter into heated exchanges with Dan and to accuse Dan of being responsible for Hap's son's suicide. Whitney had remained at Dan's house and overheard Dan's end of these same calls. The calls prompted Whitney to take a pickup truck from Dan's residence and drive over to Hap's residence.

Upon arriving at Hap's, Whitney was involved in a verbal altercation with her father that escalated to the point that Hap grabbed her by the head and "head-butted" her. This resulted in Whitney losing consciousness and suffering a black eye and bloody nose. When Whitney came to, Hap was choking her, and Mendy was trying to pull Hap off. Whitney managed to get away and fled the scene in the pickup truck. While trying to rush back to Dan's, where she intended to call the police, Whitney ran off the road and crashed the pickup truck.

After Whitney fled, Hap became more disoriented and seemingly confused. At some point in time he acquired at least three firearms and proceeded to fire one of the rifles at the floor near Mendy. During this time period, Hap was also making threats to

2

kill himself, Mendy, and Whitney. Eventually, a SWAT team arrived at Hap's residence. Hap refused to allow them in, and they forced the door and took him into custody. Hap was charged with aggravated assault with a deadly weapon. Mendy subsequently filed for a protective order.

At the hearing on the protective order, Hap claimed his Fifth Amendment right to remain silent and did not testify about the events that transpired at his residence.[1] Mendy and Whitney testified as reflected above. Dan testified that Mendy did not have a good reputation for truthfulness and that he and Hap did not have a verbal altercation on the evening in question. One other witness testified for Hap, and that witness testified that Mendy and Whitney were not truthful.

The trial court granted the protective order as requested. Hap has perfected his appeal and contends that the evidence is legally and factually insufficient to support the trial court's granting of a protective order. Hap also attacks some of the findings of fact that the trial court used to support the granting of the protective order. Finding that the evidence is legally and factually sufficient to support the trial court's conclusion that a protective order was necessary, we affirm.

## Standard of Review and Applicable Law

A trial court's findings of fact in a bench trial "have the same force and dignity as the jury's verdict upon questions." Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). Further, when the trial court acts as a factfinder, its findings are

---

[1] See U.S. CONST. amend. V.

3

reviewed under legal and factual sufficiency standards.  See  In re Doe, 19 S.W.3d 249, 253 (Tex. 2000).

In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the trial court's finding.  See AutoZone, Inc. v. Reyes, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam).  The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [factfinder] to reach the [conclusion] under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We must credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable fact-finder could not.  Id.  The factfinder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. Id. at 819.

We review the trial court's conclusions of law de novo.  See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports.  See Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex.App.—Austin 1999, pet. denied); see also Fulgham v. Fischer, 349 S.W.3d 153, 158 (Tex. App.—Dallas 2011, no pet.). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory.  See Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex.App.—Austin 1992, no writ); see also Fulgham, 349 S.W.3d at 158.  Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law.  Westech Eng'g, Inc., 835 S.W.2d at 196.

4

In a factual sufficiency review, we must consider and weigh all of the evidence in a neutral light. In re A.C.B., 302 S.W.3d 560, 564 (Tex.App.—Amarillo 2009, no pet.) (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). The evidence is factually insufficient only if we conclude "that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict." Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). Fact findings are not conclusive when, as in this case, a complete reporter's record appears in the record if the contrary is established as a matter of law or if there is no evidence to support the finding. Material P'ships, Inc. v. Ventura, 102 S.W.3d 252, 257 (Tex.App.—Houston [14th Dist.] 2003, pet. denied).

The trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future. TEX. FAM. CODE ANN. § 81.001 (West 2008), § 85.001 (West Supp. 2012).[2] Family violence includes the following:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

Id. § 71.004(1) (West 2008). Our focus, therefore, is on the evidence regarding any act by Hap that was "intended to result in physical harm, bodily injury, or assault" to Mendy and Whitney or that was a threat reasonably placing Mendy and Whitney "in fear of

---

[2] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

imminent physical harm, bodily injury, assault" and the likelihood that such threats, if made, would reoccur in the future. See id. §§ 81.001, 85.001.

Analysis

Our analysis begins with the testimony that Whitney gave outlining how she was head-butted by Hap. This caused her to momentarily lose consciousness. When she came to, Hap was choking her. Whitney testified to these events and produced a picture that clearly shows the bloody nose and the early stages of a black eye. Against this evidence, Hap took the Fifth Amendment and refused to answer any questions about the specific allegations of assault.

Next, we consider the testimony offered by Mendy. She testified that after Whitney left, Hap became increasingly loud and belligerent. Mendy further testified that he was highly intoxicated and she felt he had been using methamphetamine. Her opinion about the use of methamphetamine was based on the fact that Hap was sweating profusely and, during their marriage, she had observed Hap using methamphetamine and subsequently sweating profusely. Additionally, Mendy testified that, a day or two before the incident in question, she observed Hap smoking a "meth pipe." Mendy stated that at one point during the incident at issue, Hap took a rifle and fired a shot into the floor near her. She testified he was threatening to kill himself, her, and Whitney. Mendy testified that she was in fear of physical harm as a result of Hap's actions. Finally, Mendy stated that, during their marriage, there were incidents of physical and verbal abuse inflicted by Hap on herself and the children. Again, all Hap offered by way of contradictory evidence was his claiming of his Fifth Amendment right

6

not to testify and the testimony of two witnesses who claimed that neither Mendy nor Whitney could be believed.

We begin our analysis by noting that it is up to the factfinder to judge the credibility of the witnesses and the weight to be given to the testimony. See Teel v. Shifflett, 309 S.W.3d 597, 603 (Tex.App.—Houston [14th Dist.] 2010, pet. denied). Further, the trial court as factfinder, in a civil case, is free to draw negative inferences from Hap's invocation of the Fifth Amendment. See TEX. R. EVID. 513(c); Wilz v. Flournoy, 228 S.W.3d 674, 677 (Tex. 2007) (per curiam). When we then view the evidence in the light most favorable to the trial court's decision to grant the protective order and indulge every reasonable inference that would support that decision, as we must in a legal sufficiency review, the evidence is legally sufficient to support the trial court's conclusion that the protective order should be granted. See City of Keller, 168 S.W.3d at 823.

Next, we must examine all of the evidence and do so in a neutral light in order to ascertain if evidence is so contrary to the trial court's finding as to make that finding clearly wrong and unjust. See Golden Eagle, 116 S.W.3d at 761. The evidence previously recited does not lead us to the conclusion that the trial court's findings were so contrary to the evidence as to be clearly wrong or unjust. Id. Therefore, the evidence is factually sufficient to support the trial court's issuance of the protective order. Accordingly, Hap's issue challenging the sufficiency of the evidence is overruled.

Hap contends that the evidence supporting the possibility of future acts of family violence was not present and could not have been based upon a single incident. §

85.001. Hap is wrong for two reasons. First, the evidence supported the finding that Hap committed two acts of family violence during this one episode. Second, even if we consider Hap's actions as a single act of family violence, this evidence of a past act can be legally and factually sufficient evidence that sustains the award of a protective order. See Teel, 309 S.W.3d at 604 (concluding that evidence of past act(s) of family violence permit inference that the behavior will continue in the future). Additionally, Mendy testified that, during her marriage to Hap, he had committed acts of family violence against her and the children. This evidence is legally and factually sufficient as to the issue of future acts of family violence. See City of Keller, 168 S.W.3d at 823; Golden Eagle, 116 S.W.3d at 761. Hap's issue to the contrary is overruled.

Hap has appealed some of the very specific findings of fact in addition to the trial court's decision to grant the protective order. In all but findings of fact numbers 2, 5, and 9, Hap's complaint is that the evidence showed the referenced fact occurred on October 1, 2011, and not October 21, 2011, as recited in the findings of fact. What is not said, nor even mentioned, is what difference this makes to the ultimate conclusions of the trial court that the assault upon Whitney and aggravated assault upon Mendy occurred and that, as a result of the occurrence, a protective order was necessary. This appears to be a scrivener's error and does not impact the correctness of the trial court's judgment. See TEX. R. APP. P. 44.1(a)(1).

As to finding of fact number 2, relating to the death and funeral of the Houchins' son, the only part that is clearly not supported by the record is the date. The trial court found the date of the burial as September 28, 2011, when the record reflects that it was October 1, 2011. Again, this difference in the date is not the type of error that would

8

lead the Court to reverse the trial court's judgment. See id. As to the other matters found in finding of fact number 2, there was some evidence to support these facts and the trial court's determination is supported by the record. See City of Keller, 168 S.W.3d at 823; Golden Eagle, 116 S.W.3d at 761.

As to finding of fact number 5, Hap is correct that the record does not support the finding that Whitney passed out from being strangled, as recited in finding of fact number 5. What the record demonstrates is that Whitney passed out from being head-butted by Hap and that when she regained consciousness, Hap was strangling her. This error, however, did not result in an erroneous judgment being entered because the record supports the trial court's determination to enter a protective order. See TEX. R. APP. P. 44.1(a).

As Hap points out, finding of fact number 9, which describes conduct by Hap's relatives, does not deal with any action by him. Accordingly, the fact that the trial court entered the finding is of no moment and could not have led to the entry of an erroneous judgment. See id.

Conclusion

Having overruled Hap's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


9