**AFFIRM; and Opinion Filed February 8, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00068-CV

### WHEEL TECHNOLOGIES, INC., Appellant
### V.
### EDGAR GONZALEZ, Appellee

**On Appeal from the County Court at Law No. 5
Dallas County, Texas
Trial Court Cause No. CC-13-04344-E**

## MEMORANDUM OPINION
Before Justices Bridges, Evans, and Schenck
Opinion by Justice Bridges

Appellee Edgar Gonzalez filed suit against appellant Wheel Technologies, Inc. (WTI) for suit on sworn account, breach of oral contract, and quantum meruit. After a bench trial, the trial court found in favor of Gonzales and awarded $31,103.01 in damages, $6,200 in attorney's fees, and $ 1,306.23 in costs. On appeal, WTI argues there was no evidence, or insufficient evidence, to support the trial court's judgment for a suit on sworn account. We affirm.

### Background

The disputed fact in this case is whether Gonzales delivered wheels to WTI and WTI failed to pay. Two witnesses testified during the bench trial: Gonzalez and Danny Blaser, the president of WTI.

Gonzales testified he owned a business that provided tires to WTI, who then sold them as part of insurance claims or to people who needed tire replacements. Gonzalez's contact at WTI

was Mike Owens, the general manager. When WTI needed a specific tire, Owens contacted Gonzalez, who delivered the tire if he had it in stock. Because the exchanges often happened after hours, WTI did not always have a check immediately available for payment or a receipt. At those times, Gonzalez returned later for payment. Gonzalez explained WTI sometimes created a credit memo, but it did not happen all the time. On other occasions, Owens handed him a check at delivery.

Gonzalez created an accounting of every delivery he made to WTI, which included payments made by WTI and any offsets. He also had debit memos that WTI sometimes created and gave him when he received a check. These memos, however, were not created for every transaction.

In 2011, WTI's computer system crashed without a backup. Gonzalez and Owens spent a couple hours discussing what orders were still unpaid. Although they reached an agreement, Gonzales believed "There was still some doubts. I think we both took a generous approach." He further explained WTI was really busy during that time, and "things were not getting handled to the detail that they should have." Debit memos were missing, and there were some concerns about WTI's accountability.

Gonzalez testified WTI was usually behind on payments to him. When WTI got behind on payments, he sent email updates to Owens. Gonzalez relied on his accounting for proof of delivered goods to WTI and attached an updated balance sheet with each email regarding the status of any open balance.

During the bench trial, the trial court admitted Gonzalez's accounting, which reflected WTI's outstanding balance of $33,103.01. Gonzales admitted he had nothing from WTI showing WTI received the goods. He requested such documentation in discovery but received nothing.

Blaser testified he did not deal directly with Gonzalez during any of the tire transactions.[1] He explained that most of WTI's vendors required a purchase order for tires so a purchase order would have to be generated "on our end" in order to sell the goods through its accounting system. He explained, "It must come in the door first before I can sell it out the door." WTI could not sell inventory "we haven't brought in through a purchase order."

According to Blaser, purchase orders did not exist for those tires Gonzalez allegedly delivered to WTI without payment. However, Blaser admitted WTI experienced a "computer glitch" in which they lost two-and-a-half months of business records and relied on customers to fill the information gap to repair the accounting. Blaser admitted WTI's accounting could be missing information. The accounting matched some of Gonzalez's accounting for those orders that had been paid, omitted others, and contained irrelevant information about orders Gonzalez was not pursuing.

After the bench trial, the court found in favor of Gonzalez and awarded him $31,103.01 in damages, $6,200 in attorney's fees, and $ 1,306.23 in costs.

**Discussion**

WTI argues that because Gonzalez failed to present any evidence that the wheels he purportedly delivered to WTI were in fact delivered and that personal property had therefore passed to WTI, there was no evidence, or insufficient evidence, to support the trial court's final judgment. Gonzalez responds the judgment should be upheld because WTI did not request findings of fact and conclusions of law; therefore, the judgment implies all necessary findings to support it.

When neither party requests findings of fact and conclusions of law, it is implied that the trial court made all fact findings necessary to support its judgment. *BMC Software Belgium,*

---

[1] At the time of trial, Owens had quit.

*N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Accordingly, we must imply a finding that Gonzalez delivered the wheels to WTI. However, when the appellate record includes the reporter's and clerk's records, as in this case, implied findings of fact may be challenged for legal sufficiency. *Id.* In reviewing a legal sufficiency point, we view the evidence in the light most favorable to the prevailing party and disregard all evidence and inferences to the contrary. *Id.* Findings are legally sufficient if they are supported by more than a scintilla of evidence. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

In a bench trial, the trial court, as factfinder, is the sole judge of witness credibility. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). As long as the evidence falls within the "zone of reasonable disagreement," we will not substitute our judgment for that of the factfinder. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

In a suit on a sworn account, when the defendant files a sworn denial, the plaintiff has the burden to prove all essential elements of the claim. *Oro-Castillo v. Nat'l Specialty Servs.*, No. 05-01-01319-CV, 2002 WL 971913, at *3 (Tex. App.—Dallas May 13, 2002, no pet.) (not designated for publication). The essential elements are: (1) sale and delivery of the merchandise and (2) the amount of the account is just. *Id.* A sworn account "must show with reasonable certainty the nature of each item, the date, and the charge therefor." *See Hassler v. Tex. Gypsum Co.*, 525 S.W.2d 53, 55 (Tex. App.—Dallas 1975, no writ). WTI challenges the first element.

This case essentially came down to a "he said, he said" between two parties' explanations of accounting. Blaser testified WTI always created a purchase order when it received a delivery and because WTI had no record of any outstanding purchase orders owed to Gonzalez, then it never received the tires. Gonzalez testified to the contrary. As the judge of witness credibility, the trial court was free to believe Gonzalez's testimony that he delivered the tires and relied on

his accounting, which was admitted without objection[2], for proof that he delivered the tires to WTI. *See Fulgham*, 349 S.W.3d at 157; *see also Valley Steel Prods. Co. v. Howell*, 775 S.W.2d 34, 37 (Tex. App.—Houston [1st Dist.] 1989, no writ) (concluding invoices and other documents provided more than a scintilla of evidence goods were delivered in suit on sworn account). Further, Blaser admitted he could not say for sure Owens always created a purchase order upon receipt of tires because Blaser was never personally involved in any of the transactions. Rather, Gonzalez testified there were many times in which the deliveries occurred after hours so checks and other documentation were not always ready when he made a delivery.

Further, Gonzalez testified WTI was usually behind on payments. He provided emails in which Owens acknowledged the late payments and wanted to work towards a solution. In one particular email, Owens said, "I spoke to Danny about getting you paid and he agreed, so there's money to be had this week." The emails never said Gonzalez was not entitled to payment because WTI did not receive the goods. Rather, the trial court could reasonably infer the emails indicated Gonzalez delivered the tires.

It is undisputed WTI suffered a computer crash in which it lost data and relied on its customers to recreate and fill in the gaps. Gonzalez testified "there was still some doubts. I think we both took a generous approach." He further explained WTI was really busy during that time and "things were not getting handled to the detail that they should have," so debit memos were missing and there was some concern about WTI's accountability.

Considering the evidence in the light most favorable to the verdict, the trial court heard more than a scintilla of evidence supporting Gonzalez's suit on sworn account. *Formosa*

---

[2] Although WTI argues Gonzalez's accounting suffered from deficiencies such as not uniformly describing the wheels and inserting question marks in the "comments" column, WTI did not object to the document's admission. To the extent WTI attempts to challenge the admissibility of the accounting, its argument shall not be considered. TEX. R. APP. P. 33.1.

*Plastics Corp. USA*, 960 S.W.2d at 48.  We overrule WTI's sole issue.  The judgment of the trial court is affirmed.


                                        /David L. Bridges/
                                        DAVID L. BRIDGES
                                        JUSTICE


160068F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WHEEL TECHNOLOGIES, INC.,
Appellant

No. 05-16-00068-CV     V.

EDGAR GONZALEZ, Appellee

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-13-04344-E.
Opinion delivered by Justice Bridges.
Justices Evans and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee EDGAR GONZALEZ recover his costs of this appeal from appellant WHEEL TECHNOLOGIES, INC.

Judgment entered this 8th day of February, 2017.