**Affirm in part, Reverse and Remand in part; Opinion Filed March 26, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00432-CV**

**VICTORIA L. MANN, Appellant**
**V.**
**L. SCOTT PROPST, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-00478-2018**

## MEMORANDUM OPINION

Before Justices Myers, Schenck, and Carlyle
Opinion by Justice Myers

This is an appeal from a judgment in favor of appellee L. Scott Propst, and against his former wife, appellant Victoria Mann, awarding ownership to Propst of disputed funds in a Texas Tomorrow Fund Account. In two issues, Mann argues (1) the trial court erred by granting Propst judgment for the entire balance of the account, less a sum awarded to Mann; and (2) the trial court erred by not granting judgment in favor of Mann on her counterclaim for declaratory judgment relief against Propst. We affirm in part and reverse and remand in part.

### BACKGROUND AND PROCEDURAL HISTORY

The lawsuit by appellee Propst against appellant Mann sought to partition

funds in a refund check they had received from an account at the Texas Tomorrow Funds (TTF), which was established after their divorce for the benefit of their now-deceased daughter, Jessica, born on September 25, 1991.

Under the terms of the parties' Agreed Decree of Divorce of August 17, 1995, Mann was named the sole managing conservator of Jessica and Propst was the possessory conservator who paid child support to Mann. The divorce decree provided in part that Propst was obligated to pay to Mann child support of $250 per month, with the first payment being due and payable on September 15, 1995, and a like payment being due on the 15th day of each month thereafter until the date of the earliest occurrence of certain events, which included Jessica reaching the age of 18 years, marrying, dying, and "further order modifying this child support."

Approximately four years later on November 1, 1999, Mann and her then-husband entered, as joint purchasers, into a TTF, Texas Prepaid Higher Education Tuition Program Master Agreement to set aside money for Jessica's college education. Mann and her husband checked the payment option on the application for "[m]onthly installments until graduation (through August 1 of the projected year of high school graduation)."

The TTF master agreement included provisions addressing substitution, assignment, and transfer, as well as termination of the agreement and the refund of money paid. Article VII, called "TERMINATION AND REFUND," provides in subparagraph one that "[e]xcept as otherwise specifically provided herein, only the

Purchaser of Prepaid Tuition Contract may terminate the Prepaid Tuition Contract or receive a refund of amounts paid in under the Prepaid Tuition Contract." Subparagraph six provides in part:

> If the Beneficiary dies . . . after having graduated from high school but prior to attending an institution of higher education or a private or independent institution of higher education, a refund may be issued or the benefits under such contract may be transferred to another qualified beneficiary. If a change of beneficiary is not requested, a lump sum refund may be made within 80 days of the date the Program is notified of the death or disability to the Purchaser of the Prepaid Tuition Contract, provided proof of death or disability is submitted in a form acceptable to the Board.

Article VIII, called "SUBSTITUTION, ASSIGNMENT AND TRANSFER," provides in subparagraph two:

> The Purchaser may transfer ownership of a Prepaid Tuition Contract to another eligible Purchaser provided that the transfer is accomplished without consideration (except as a part of a transaction in which the transferee of the contract is assuming the transferor's obligation to a third party to pay the Beneficiary's tuition and required fees), and if the Beneficiary is a nonresident of Texas, the substitute Purchaser meets the applicable Residency requirements.

The agreement defines a "Purchaser" as "the person or persons obligated to make payments under a Prepaid Tuition Plan Contract."

On March 26, 2002, Mann and Propst entered into an agreed order in a suit to modify the parent-child relationship, with the parents becoming joint managing conservators and Propst now serving as the primary joint managing conservator. The 2002 order, approved as to form and substance by both parents, stated in part that all payments of child support for the benefit of Jessica currently paid by Propst

to Mann "shall immediately cease."  The order included the following provisions:

**AGREEMENT OF THE PARTIES**

The Court finds that the parties have entered into a written agreement as contained in this Agreed Order in Suit to Modify Parent-Child relationship by virtue of having approved this Agreed Order as to both form and substance.  To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract.  The Court approves the agreement of the parties as contained in this Agreed Order in Suit to Modify Parent-Child Relationship.

* * * *

**CHILD SUPPORT**

Based upon [Mann] being currently unemployed and unable to find fulltime employment, [Propst] agrees, in lieu of direct payment to him as obligee and primary joint managing conservator of [Jessica], that [Mann] shall pay $200.00 per month as child support for the benefit of [Jessica] into the Texas Tomorrow Fund, P.O. Box 13407, Austin Texas 78711-3407, account number [  ], with the first payment being due and payable on or before April 15, 2002, and a like $200.00 payment being due and payable on or before the 15th day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. the child reaches the age of eighteen years . . . . ;

2. the child marries;

3. the child dies;

4. the child's disabilities are otherwise removed for general purposes;

5. [Mann] and [Propst] remarry each other; or

6. further order modifying this child support.

* * * *

**Texas Tomorrow Fund Purchaser.**

[Mann] agrees to execute and submit a "change of purchaser" form

(attached hereto as Exhibit A) to the Texas Prepaid Higher Education Tuition Board, P.O. Box 13407, Austin Texas 78711-3407, to add [Propst] as a joint purchaser on the Texas Tomorrow Fund, account number [  ], by no later than April 1, 2002.  [Mann] further agrees to provide, within 10 days of receiving a statement, a copy of the Texas Tomorrow Fund's statement to [Propst] each time a statement is provided. . . .

Handwritten and initialed by the court and both parties on page eleven of the agreed order is the following provision:  "IT IS ORDERED that [Mann] shall not withdraw any money from the Texas Tomorrow Fund, account number [  ], except by joint agreement, evidenced in writing, for the specific purpose of [Jessica's] college education."

On March 29, 2002, pursuant to the agreed order, Mann signed a "Texas Prepaid Higher Education Tuition Program Change of Purchaser" form—the same form attached to the agreed order—that identifies Propst as the new joint purchaser on the account.  Propst signed the form as the "New Joint Purchaser," and the word "joint" was handwritten into the "CERTIFICATE OF CURRENT PURCHASER," where Mann certified she was relinquishing "all rights and responsibilities of the Contract to the New Joint Purchaser."  It appears in the record as follows:

On September 4, 2009, the parties entered into a second agreed order further modifying Mann's child support obligations. The order provided in part:

> IT IS ORDERED that [Mann] is obligated to pay and shall pay to [Propst] support for [Jessica] of $330.66 per month payable under the following terms and conditions. IT IS ORDERED that Respondent, [Mann], shall continue to pay $190.00 as child support for the benefit of [Jessica], into the Texas Tomorrow Fund, P.O. Box 13407, Austin, Texas 78711-3407, account number [ ] with the first payment of $190.00 per month due and payable on October 1, 2009 and a like $190.00 payment being due and payable on the 1st day of each month, thereafter until such time as the purchase price of $22,975.61 shall be paid in full. Additionally, [Mann], shall pay as child support the remainder of the total amount of child support due each month in the amount of $140.66 as child support for the benefit of [Jessica], with the first installment being due and payable on October 1, 2009 and a like payment of $140.66 being due and payable on or before the 1st day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:
>
> 1. the child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;
>
> 2. the child marries;
>
> 3. the child dies;
>
> 4. the child's disabilities are otherwise removed for general purposes; or
>
> 5. the date on which the child begins active service as defined by 10 U.S.C. Section 101 after enlisting in the armed forces of the United States.

As before, the 2009 agreed order was approved as to form and content by both parents.

For ten years, from August 1, 2000 to August 1, 2010, Mann made the required monthly payments under the agreement, for a total amount paid of

$22,975.61. Neither the 2002 nor the 2009 agreed orders, however, specified what would occur if Jessica did not use the money in the TTF account, a situation that arose when she died on December 6, 2017. TTF was formally notified of Jessica's death in a contract cancellation form signed by Mann on December 22, 2017. At the time of her death, Jessica had not used any of the funds in the TTF account.

In January of 2018, Propst filed a lawsuit against Mann seeking a partition of the funds in the TTF account. His original petition alleged in part: "Plaintiff would show that ownership of the Texas Tomorrow Fund was vested in Plaintiff by way of the Court Orders signed by the 366th District Court of Collin County, Texas." Mann responded with a general denial and a counterclaim for a declaratory judgment regarding the "rights and interests of the parties" under the TTF account agreement and the $22,348.61 in principal and the $27,489.99 in earnings—comprising the $49,838.60 refund check provided by TTF, made jointly payable to both Propst and Mann. Mann asked the court to declare that all of the funds belonged to her and that the court order disbursement of the refund proceeds. Mann also moved for summary judgment, which the court denied.

Following a bench trial at which both Mann and Propst testified, the trial court signed a final judgment on January 16, 2019 that Propst and Mann were joint owners of the TTF account; that Mann took out the account and paid in the sum of $4,060, to which she was entitled to be reimbursed; and that the remainder of the money paid into the account "was paid in as child support by agreement of the

parties." The court granted judgment to Propst for the full amount of the TTF account ($49,838.60), minus the $4,060 awarded to Mann. According to the judgment, the $4060 was "a refund due [Mann] of the money that she paid in prior to the parties' first agreement for the monthly payments to be paid to the account as child support." The court ordered the parties to bear their own attorney's fees and costs.

In its findings of fact and conclusions of law, the court found:

After both sides rested and closed their cases the Court found, based on the preponderance of the evidence, that both [Propst] and [Mann] are joint owners of the Texas Tomorrow Fund account. The Court noted that [Mann] paid $4060.00 initially into the account when it was first created and is entitled to reimbursement in the amount of $4060.00, she paid when she had the account established. The Court found that the remainder of the money in the account in the amount of $45,778.60 be awarded to [Propst] in that all but $4060.00 was paid as child support by [Mann] to [Propst]. . . .

The Court finds that on March 26, 2002 that an order was entered in the 366th District Court that stated, "VICTORIA LYNN MANN agrees to execute and submit a 'change of purchaser' form to the Texas Prepaid higher Education Tuition Board to add L. SCOTT PROPST as a joint purchaser on the Texas Tomorrow Fund." It was also Ordered that "VICTORIA LYNN MANN shall pay $200.00 per month as child support for the benefit of [Jessica] into the Texas Tomorrow Fund . . . . and a like $200.00 payment being due and payable on or before the 15th day of each month thereafter."

On the 4th day of September 2009, the Court entered another Order that required "VICTORIA LYNN MANN shall continue to pay $190.00 as child support for the benefit of [Jessica] into the Texas Tomorrow Fund".

The Court after hearing the evidence at trial found that all monies paid before March 26, 2002 were paid by Defendant [Mann] and all payments made after March 26, 2002 were child support payments

–8–

made by [Mann] into the Texas Tomorrow Fund as child support for the use and benefit of [Jessica], by Plaintiff [Propst].

The Court further finds that Plaintiff [Propst] and Defendant [Mann] entered into an agreement in March 2002 and September 2009 in the Family Court where [Propst] could have used the $200.00 in 2002 and the $190.00 in 2009 as child support to pay bills for his family and the child [Jessica] but elected to use those funds to deposit those funds in the Texas Tomorrow Fund and as such he was the owner and entitled to 100% of all those funds and the interest that accrued on those funds from March 2002 until now. In addition, the Court finds that [Mann] is not entitled to recoup funds she paid to [Propst] for child support.

Mann filed a motion for new trial and an amended motion for new trial, both of which were overruled by operation of law.

## DISCUSSION

In her first issue, Mann argues the trial court erred by granting judgment for Propst for the entire balance of the TTF account, less the $4,060 awarded to Mann. In her second issue, she contends the trial court erred by not granting judgment in her favor on her counterclaim for declaratory judgment relief. We will address these issues together.

This case involves a dispute over money paid into the TTF account post-divorce, and Propst brought a suit for partition of funds asserting his claim to the TTF account balance. The purpose of a post-dissolution partition suit under the Texas Property Code is to divide jointly owned property. *See* TEX. PROP. CODE ANN. § 23.001. Section 23.001 provides:

A joint owner or claimant of real property or an interest in real property or a joint owner of personal property may compel a partition of the interest or the property among the joint owners or claimants

under this chapter and the Texas Rules of Civil Procedure.

*Id.* Rule 772 of the Texas Rules of Civil Procedure provides: "An action seeking partition of personal property as authorized by Section 23.001, Texas Property Code, shall be commenced in the same manner as other civil suits, and the several owners or claimants of such property shall be cited as in other cases." TEX. R. CIV. P. 772.

A petition for partition under the Property Code can be filed by any joint owner or claimant of real property or any joint owner of personal property. *See* TEX. PROP. CODE ANN. § 23.001; *McGehee v. Campbell*, No. 01–08–1023-CV, 2010 WL 1241300, *3 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, no pet.) (mem. op.); *Johnson v. La Mesa Farms, Inc.*, No. 07–07–0241–CV, 2009 WL 35353, at *3 (Tex. App.—Amarillo Jan. 7, 2009, pet. denied) (mem. op.). In a post-dissolution partition suit governed by the Property Code, the petitioner has the burden of establishing that the property is jointly owned and the petitioner has a present possessory interest in the property. *See Manchaca v. Martinez*, 148 S.W.2d 391, 391 (Tex. 1941); *Savell v. Savell*, 837 S.W.2d 836, 840 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

The parties, however, disagree on the appropriate standard of review for this issue. Propst contends the standard of review is abuse of discretion because this is a suit for partition, while Mann argues we should conduct a de novo review. It is true that the rules of equity govern a trial court's partition of property, *see*

*Rodriguez v. Rivas*, 573 S.W.3d 447, 451 (Tex. App.—Amarillo 2019, no pet.); *Bowman v. Stephen*, 569 S.W.3d 210, 223 (Tex. App.—Houston [1st] 2018, no pet.); *McGehee*, 2010 WL 1241300, at *3, and we review a trial court's decision granting or denying equitable relief for abuse of discretion. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex. 2008); *Rodriguez*, 573 S.W.3d at 451. But the issues in this case concern the interpretation of the agreed orders and the master agreement—questions of law we review de novo. *See, e.g.*, *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018) (trial court's legal determinations reviewed de novo); *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (construction of unambiguous contract is a question of law reviewed de novo).

Thus, a party challenging the legal sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We may sustain the legal sufficiency challenge only when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from crediting the only evidence of a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively disproves a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Brandt Cos., LLC v. Beard Process Sols., Inc.*, No. 05–17–00780–CV, 2018 WL 4103210, at *10 (Tex. App.—Dallas Aug. 29, 2018, pet. granted, judgm't vacated w.r.m.) (mem. op.); *TRG-Braes Brook, LP v.*

*Hepfner*, No. 05–17–01094–CV, 2018 WL 3434555, at *2 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.).

We review de novo the trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet); *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ). Incorrect conclusions of law do not require reversal if the controlling findings of fact support a correct legal theory. *Fulgham*, 349 S.W.3d at 157; *Westech*, 835 S.W.2d at 196. Also, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Fulgham*, 349 S.W.3d at 157; *Westech*, 835 S.W.2d at 196.

We interpret the parties' agreed orders according to the law of contracts.[1] *See Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986) (marital property agreement incorporated into final divorce decree is interpreted as a contract); *In re P.D.D.*, 256 S.W.3d 834, 844 (Tex. App.—Texarkana 2008, no pet.) ("An agreed judgment must be interpreted as if it were a contract between the parties and the

---

[1] In fact, the 2002 agreed order provided that "[t]o the extent permitted by law, the parties stipulate that the agreement is enforceable as a contract."

–12–

interpretation is, accordingly, governed by the laws relating to contracts."); *Chapman v. Abbot*, 251 S.W.3d 612, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (agreed divorce decree is a contract subject to usual rules of contract interpretation); *Soto v. Soto*, 936 S.W.2d 338, 341 (Tex. App.—El Paso 1996, no writ) (consent judgments look for their interpretation to law of contracts). Our primary concern when interpreting an agreement is to ascertain and give effect to the parties' intent as expressed in the agreement. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Chapman*, 251 S.W.3d at 616. We examine the writing as a whole in an effort to harmonize and give effect to all the provisions so that none are rendered meaningless. *Coker*, 650 S.W.2d at 393; *see also In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."); *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied) ("Contractual provisions should be considered with reference to the entire instrument; no single provision should control."). Also, "[w]ords used in a contract should be given their plain grammatical meaning unless it definitely appears such a meaning would defeat the intentions of the parties." *Am. Realty Trust, Inc. v. JDN Real Estate–McKinney, L.P.*, 74 S.W.3d 527, 532 (Tex. App.—Dallas 2002, pet. denied)

Whether a contract is ambiguous is a question of law for the court. *Heritage*

*Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). If the agreement can be given a certain or definite legal meaning or interpretation, it is not ambiguous and we construe it as a matter of law. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005); *Coker*, 650 S.W.2d at 393; *Broesche v. Jacobson*, 218 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). We construe unambiguous contracts according to the plain meaning of their express wording. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985). Unambiguous contracts are enforced as written. *Heritage Res., Inc*., 939 S.W.2d at 121.

The trial court in this case concluded that all payments made into the TTF account after March 26, 2002, the date the trial court signed the 2002 agreed order, were child support payments made by Mann to Propst. We have held that the term "child support" as used in chapter 154 of the Texas Family Code does not include support for nondisabled persons who have turned eighteen and graduated from high school. *In re W.R.B.*, No. 05–12–00776–CV, 2014 WL 1008222, at *4 (Tex. App.—Dallas Feb. 20, 2014, pet. denied) (trial court had no authority to order reimbursement for post-majority support because mother failed to seek contractual relief). "Child support, by definition, applies only to a child under the age of 18 years who has not yet graduated from high school or a high-school equivalent program." *In re W.R.B.*, 2014 WL 1008222, at *4; *see also In re H.L.B.*, No. 05–18–01061–CV, 2020 WL 104623, at *4 (Tex. App.—Dallas Jan. 9, 2020, no pet.) (mem. op.) (regardless of label placed upon it, father's obligation to pay minor

–14–

child's school tuition was not a contractual debt owed to mother; it was an obligation undertaken to fulfill a duty owed directly to the minor and, as a result, was a form of child support).  Thus, post-majority support is not child support, but "an agreement to pay a child's college tuition after the child reaches the age of majority can be enforced contractually."  *In re H.L.B.*, 2020 WL 104623, at *4 (citing *In re W.R.B.*, 2014 WL 1008222, at *4).

In this case, Jessica turned eighteen years of age on September 25, 2009, ten months and seven days before Mann made her last monthly payment on August 1, 2010.  Although payments made by Mann after Jessica reached the age of majority were not "child support" as that term is used in chapter 154 of the Texas Family Code, the parties had an agreement for the payment of post-majority support that is enforceable contractually, and this is the question to which we now turn.

Mann argues that, to the extent she assigned an interest in the TTF account to Propst in 2002, the evidence at trial (e.g., the master agreement, the divorce decree, and the 2002 and 2009 agreed orders) showed that Propst received consideration in the agreed orders.  Mann further argues that this conclusively disproves—given the anti-assignment provision in article VIII of the master agreement permitting a transfer of ownership to another eligible purchaser only if accomplished without consideration—that Propst gained an ownership interest in the TTF account under section 23.001.  Mann also points out that the TTF master agreement allowed for a lump-sum payment to be made to the "purchaser," defined

as "the person or persons obligated to make payments under a Prepaid Tuition Plan Contract." According to Mann, only she qualifies as a "purchaser" under the TTF master agreement because, she presumes, she was the person "obligated" to make the contractual payments. Alternatively, Mann claims there is no more than a scintilla of evidence that Propst gained an ownership interest.

An anti-assignment clause is considered an affirmative defense and, like other affirmative defenses, it can be waived. *See Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 719, 722 (Tex. App.—Dallas 2004, no pet.). Moreover, affirmative defenses are waived if they are not pleaded or tried by consent. *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. denied); *see also* TEX. R. CIV. P. 94; *Land Title Co. of Dall., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980) (Rule 94 requires all matters constituting avoidance or affirmative defense be pleaded to give opposing party notice of defensive issues to be tried; failure to do so results in waiver of affirmative defense); *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 816 (Tex. App.—Dallas 2003, pet. denied) (issues raised by builder on appeal in breach of contract action were waived where builder failed to plead issues as affirmative defenses and failed to request proper jury questions); *Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (party waives affirmative defense if not pleaded or tried by consent). Mann did not plead the anti-assignment clause as an affirmative defense or raise it in her answer,

and she does not argue the issue was tried by consent. Nor is there any indication in the record that she brought the matter to the trial court's attention. Accordingly, to the extent Mann is relying on the anti-assignment provision as a matter of avoidance or an affirmative defense, she waived the issue.

Additionally, even if we overlooked the fact that it was not pleaded or tried by consent, a party may be estopped from asserting an anti-assignment provision if she expressly or impliedly waived enforcement of it. *See Johnson*, 148 S.W.3d at 722. In *Johnson*, for example, we concluded, based on our review of Texas case law, that any contractual provision, including an anti-assignment clause, can be waived. *Id*. at 722. In *Johnson*, the purchase agreement contained an express waiver of the anti-assignment provision in his structured settlement agreement. *Id*. at 724. We held that Johnson expressly waived any contractual right he had to assert the anti-assignment provision of his settlement agreement by executing the purchase agreement containing a "waiver of restrictions on assignability" provision. *Id*. But we also concluded that Johnson's intention to yield or waive his rights under the anti-assignment provision was demonstrated by his silence or failure to object to Stone Street's receipt of the monthly payments for approximately eleven months. *Id*. at 724–25.

In this case, Mann assigned an interest in the TTF account to Propst as part of the March 26, 2002 agreed order. The parties agreed in the 2002 order that "in lieu of direct payment to [Propst] as obligee and primary joint managing

conservator of [Jessica]," Mann would pay $200 per month into the TTF account, with the first payment due April 15, 2002. The 2009 agreed order similarly provided that Mann would continue to pay $190 per month "as child support for the benefit of [Jessica]" into the TTF account, with the first payment due October 1, 2009, and a like payment due on the first day of each month thereafter until the $22,975.61 purchase price was paid in full. According to Propst's testimony at the bench trial, he agreed to the payment by Mann of the monthly payments into the TTF account because "I just wanted to make sure that my daughter when her time was right, she was—she would be able to get an education, go to college." He also testified that "I could have used those funds, but I just wanted to make sure that, you know, [the child] was able at the time to get an education."

The parties further agreed, as part of the 2002 order, that Mann would execute and submit a "change of purchaser" form adding Propst as a joint purchaser on the account. Propst signed the change of purchaser form as a "joint purchaser," and in his deposition he testified that he was added as a joint purchaser on the account as a "[s]afety precaution" against Mann cashing in the TTF contract. As if to emphasize their intention to add Propst as a new joint purchaser on the account, the parties interlineated the word "joint" into the change of purchaser form.

Mann now argues, however, that, in effect, she did not have the authority to do this because of the anti-assignment provision. The record shows that she

accepted the benefits of the divorce decree (i.e., lowering the child support she otherwise would have owed to Propst) without invoking the anti-assignment provision, only now seeking, on appeal, to void the assignment to Propst of a joint interest in the account by relying on purported anti-assignment language that, according to the record, she never brought to the trial court's attention. Based on the record in this case, Mann impliedly waived the anti-assignment provision.

We reach a similar conclusion regarding her reliance on the definition of "purchaser." As we explained in *Johnson*, contractual rights can be waived. *See id.* at 722 ("Contractual rights can be waived," and "[a] party can waive contract provisions that are in the contract for his benefit."); *see also Watson v. CitiMortgage, Inc.*, 530 F. App'x 322, 326 (5th Cir. 2013) ("Under Texas law, a party may waive a contractual right by intentionally relinquishing it or by engaging in conduct inconsistent with that right."). Mann agreed to give Propst an interest in the TTF account as a "joint purchaser" and to relinquish all of her rights and responsibilities in the contract to him, but now argues, after accepting the benefits of the agreement, that she had no legal right to ever give the promised consideration because he did not meet the definition of "purchaser." We conclude that this issue, too, has been waived.

Apart from the anti-assignment provision and the definition of "purchaser," Mann's argument for why Propst did not have a joint ownership interest relies on section 9.201 of the Family Code, which provides for the division of community

–19–

property not previously divided by the divorce decree. *See* TEX. FAM. CODE ANN. § 9.201 (authorizing trial court to order post-divorce division of community property not divided in final divorce decree). Mann argues there is no evidence the TTF account she established in 1999, or the money she paid into it through August 2010, was undivided property of the community estate, and thus the award of an interest in the TTF account to Propst under 9.201 was reversible error. *See Fleming v. Fleming*, No. 01–11–00635–CV, 2012 WL 6754994, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 28, 2012, no pet.) (discussing section 9.201 and stating that ex-wife, as post-divorce petitioner, bore burden of proving trial court did not consider or dispose of ex-husband's alleged ownership interest). However, this argument appears to be premised on the notion that Propst brought his partition action pursuant to section 9.201. Section 9.201 does not apply to suits for partition under section 23.001. *See Mayes v. Stewart*, 11 S.W.3d 440, 457 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), *disapproved on other grounds*, *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 143 n.4 (Tex. 2019); *Phillips v. Phillips*, 951 S.W.2d 955, 957 (Tex. App.—Waco 1997, no pet.); *Carter v. Charles*, 853 S.W.2d 667, 671 (Tex. App.—Houston [14th Dist.] 1993, no writ). Indeed, as other courts have stated, the right to partition is absolute. *Phillips*, 951 S.W.2d at 957; *Ware v. Ware*, 809 S.W.2d 569, 571 (Tex. App.—San Antonio 1991, no writ).[2]

---

[2] It is also worth noting, as Propst points out, that the TTF account was not established until over four

Mann points out, correctly, that there is no provision in the agreed orders specifying what would happen to the TTF funds Mann had agreed to pay if Jessica did not use them for college. Mann insists she fulfilled all of her obligations under the agreed orders by making the required monthly payments, and that the trial court, by awarding the money to Propst, treated the agreed orders as though they provided that upon the death of Jessica without having used the funds in the TTF account, Mann and Propst agreed any refund of the money Mann paid after the 2002 agreed order (and interest accrued thereon) would be Propst's property. In so doing, Mann argues, the trial court deprived her of her separate property and violated the longstanding rule forbidding a trial court from rewriting a contract under the guise of interpreting it. *See, e.g.*, *Calpine Producers Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.).

But the trial court stated in its findings, and we have noted, that Mann agreed in the March 26, 2002 order to execute and submit a "change of purchaser" form adding Propst as a new joint purchaser on the TTF account. And Mann did, in fact, submit such a form, relinquishing, according to the change of purchaser form she signed, "all rights and responsibilities of the Contract to the New Joint Purchaser." The TTF final account summary dated January 10, 2018 clearly identifies Propst as a joint purchaser on the account. Consequently, based on the

years after the divorce decree was signed.

record in this case, the trial court did not err in concluding Propst had a joint ownership interest in the TTF account.

The next question concerns the trial court's decision awarding judgment to Propst of the full amount of the TTF account ($49,838.60), minus the $4,060 awarded to Mann. Here, too, we disagree with Mann that the court reversibly erred. Mann argues there is nothing in the 2002 agreement stating that she agreed to pay the money on behalf of Propst, nor is there any assertion she was acting as Propst's agent. However, the agreement specified that Mann was making the payments to the TTF account "in lieu of" the payment of child support to Propst. To the extent that the trial court was categorizing all of the payments made after March 26, 2002, as statutory child support under Chapter 154 of the Texas Family Code, this was error; but the record nonetheless supports that Propst was legally entitled to the monthly payments specified in the agreed orders. Moreover, the parties agreed those funds would be redirected towards the TTF account, and that Mann would (and ultimately did) effect a change of purchaser on the account, thereby relinquishing "all rights and responsibilities of the Contract" to Propst, the "New Joint Purchaser." Because the orders are worded in such a way that they can be given a certain or definite legal meaning, we conclude the trial court did not err in finding that Propst was entitled to 100 percent "of all those funds and the interest that accrued on those funds from March 26, 2002, until now." *See, e.g., Fulgham*, 349 S.W.3d at 157 (erroneous legal conclusion does not require reversal

unless the controlling findings of fact and the record will not support a correct legal theory).

Yet, the question of accrued interest presents an additional problem. As part of her counterclaim Mann prayed for "any interest or earnings thereto." We have determined that she is entitled to the $4,060 awarded by the trial court, based on what she paid into the TTF account prior to the March 26, 2002 agreed order. The court's judgment, however, does not calculate any accrued interest regarding that sum, and we have no basis in the record for making that determination. Because the calculation of interest must be left to the trial court, we remand for entry of judgment consistent with this opinion.

The trial court's judgment is affirmed in part, and reversed and remanded in part. We remand for a determination of accrued interest on the $4,060 awarded to Mann, but in all other respects the trial court's judgment is affirmed.[3] Mann's two issues are overruled.

/Lana Myers/
LANA MYERS
JUSTICE

190432F.P05

---

[3] The trial court also ordered that both parties should bear their own attorney's fees and costs, and neither party attacks that finding. Accordingly, we will not address the issue.



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

VICTORIA L MANN, Appellant

No. 05-19-00432-CV     V.

L SCOTT PROPST, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas Trial Court Cause No. 366-00478-2018.
Opinion delivered by Justice Myers. Justices Schenck and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED AND REMANDED** in part. We **REVERSE** that portion of the trial court's judgment awarding $4,060.00 to appellant Victoria L. Mann and **REMAND** this cause to the trial court for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is **AFFIRMED**. It is **ORDERED** that each party shall bear their own costs of appeal.

Judgment entered this 26th day of March, 2020.