**Jackson FULGHAM, Appellant,**

v.

**Allen FISCHER, Appellee.**

**No. 05–10–00097–CV.**

Court of Appeals of Texas, Dallas.

July 29, 2011.

**156** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Alvin Homer Badger, Dallas, TX, for Appellant.

David Gibson, Desoto, TX, for Appellee.

Before Justices MARTIN RICHTER, LANG, and FILLMORE.

## OPINION

Opinion By Justice MARTIN RICHTER.

Appellant Jackson Fulgham appeals from the trial court's judgment in favor of Allen Fischer in Fischer's suit for breach of contract, quantum meruit and unjust enrichment. In five issues, Fulgham challenges the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law. We affirm the trial court's judgment.

### BACKGROUND

Eagle Equity, Inc. (Eagle) was the owner of commercial buildings that were damaged in a hail storm. Eagle submitted an insurance claim to its insurance carrier, Travelers Lloyds Insurance Co. (Travelers) but when a dispute arose as to the value of the loss, Eagle filed a coverage lawsuit against Travelers. Pursuant to the insurance contract between them, Eagle and Travelers invoked an appraisal process whereby each party selected an appraiser of their choice at their own cost.

Eagle retained Fulgham as its appraiser. Fulgham in turn retained plaintiffs Fischer, Justin Fischer, and David Gregg to perform work necessary for the appraisal. The appraisers conducted separate investigations into the damage claimed and presented their appraisals to an appraisal umpire for resolution. When the appraisal was completed, Fulgham did not pay plaintiffs for services rendered so plaintiffs sued Fulgham for breach of contract. They also asserted a quantum meruit claim against Fulgham, Eagle, and Travelers, claiming they accepted plaintiffs' services under circumstances that reasonably notified them that plaintiffs expected to be paid. Plaintiffs also asserted an unjust enrichment claim against Eagle.

By the date of trial, October 15, 2009, the only parties remaining were Fischer and Fulgham.[1] After a bench trial, the trial court signed a final judgment in favor of Fischer in the principal amount of $139,200.00, together with interest, attorney's fees, and costs. The trial court filed findings of fact and conclusions of law, which were subsequently amended. In its first amended findings of fact and conclusions of law, the trial court made alternative conclusions of law that Fischer and Fulgham had entered into a valid and enforceable written or oral contract, that Fischer was entitled to recover under a theory of quantum meruit, and that Fischer was entitled to recover under a theory of unjust enrichment. Fulgham filed a motion to amend the first amended findings of fact and conclusions of law which the trial court denied. This appeal followed.

### DISCUSSION

Fulgham challenges the legal and factual sufficiency of the evidence to support

---

1. The trial court's final judgment states that all claims between or among the remaining parties were resolved by separate orders. The final judgment also contains an order that all relief not expressly granted therein was denied.

the trial court's findings of fact and conclusions of law. Fulgham argues that the evidence does not support the trial court's findings that a binding and enforceable written or oral contract existed between Fulgham and Fischer and was breached by Fulgham. Fulgham also complains that the trial court's alternative findings with respect to quantum meruit and unjust enrichment are inconsistent with the trial court's findings as to an oral or written contract. With respect to the trial court's conclusions of law, Fulgham complains they should not be stated in the alternative. Fulgham argues the trial court should have decided the case and entered its judgment based in contract or quantum meruit, but not both.

### Standard of Review

 In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *See Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.-Dallas 2006, pet. denied); *see also Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 943 (Tex.App.-Houston [1st Dist.] 2010, no pet.). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *See HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Merry Homes*, 312 S.W.3d at 943. When an appellant challenges the factual sufficiency of the evidence on an issue, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *Pulley*, 198 S.W.3d at 426.

We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Cameron v. Cameron*, 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the factfinder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005).

 When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Pete Dominguez Enterprises, Inc. v. Cnty. of Dallas*, 188 S.W.3d 385, 387 (Tex. App.-Dallas 2006, no pet.). When reviewing the record, we determine whether any evidence supports the challenged finding. *BBQ Blues Texas, Ltd. v. Affiliated Bus. Brokers, Inc.*, 183 S.W.3d 543, 545 (Tex. App.-Dallas 2006, pet. denied). If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (more than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

 We review de novo a trial court's conclusions of law. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). We are not bound by

the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied); *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *See Westech,* 835 S.W.2d at 196. Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.*

### Alternative Findings of Fact and Conclusions of Law

■■■■■ Fulgham argues "it is not appropriate for the Trial Court to enter both a conclusion of law based in contract and also, in alternative fashion, in quantum meruit-one of the other, not both." In his opening and reply briefs, Fulgham devotes a significant amount of time to criticizing how the findings of fact and conclusions of law were written. However, he does not expressly state that the trial court erred by making findings of fact and conclusions of law in the alternative, he does not raise this argument as an issue on appeal, and he does not provide legal authority to support his argument. An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(i). Appellate courts must construe the Texas Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule. *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.,* 150 S.W.3d 423, 427 (Tex. 2004); *see* Tex.R.App. P. 38.9. Nevertheless, it is Fulgham's burden to discuss his

assertions of error. *See Canton–Carter v. Baylor College of Medicine,* 271 S.W.3d 928, 930 (Tex.App.-Houston [14th Dist.] 2008, no pet.). We have no duty, or even right, to perform an independent review of the record and applicable law to determine if there was error. *Id.* Further, failure to cite legal authority or provide substantive analysis results in waiver of the complaint. *See Valadez v. Avitia,* 238 S.W.3d 843, 845 (Tex.App.-El Paso 2007, no pet.). Therefore, to the extent Fulgham attempts to raise an issue that the trial court erred by making findings of fact and conclusions of law in the alternative, his complaint is waived. Tex.R.App. P. 38.1(i).

### Quantum Meruit

■■■■■ Because the trial court's findings of fact and conclusions of law are stated in the alternative, we begin our analysis of Fulgham's issues presented for appeal by considering his third issue—that the evidence presented at trial was insufficient to support a judgment in favor of Fischer based on quantum meruit. Regarding Fischer's quantum meruit claim, the trial court made the following findings of fact:

7. In the alternative, Plaintiff Allen Fischer rendered valuable services to and for Defendant Jackson Fulgham, the person sought to be charged in this case. Fulgham's testimony to the contrary was not credible.

8. Jackson Fulgham accepted, used and enjoyed the benefits of Plaintiff Allen Fischer's services. Fulgham's testimony that Fischer's work was of no value was not credible.

9. Jackson Fulgham was on full notice that Allen Fischer expected to be paid for his services both in general and on an hourly basis regardless of the outcome of the appraisal.

10. The reasonable value of the services provided by Allen Fischer to Jackson Fulgham is $139,200.00

Fulgham generally challenges the trial court's findings of fact numbers 7 through 10 as inconsistent with the trial court's prior findings of a "written contract" or an "oral contract." Further, with respect to finding of fact number 10, Fulgham challenges the value of Fischer's services and argues any finding in excess of $101,250.00 is contrary to Fischer's pleadings. Fulgham also challenges the trial court's conclusion of law number 16 which states:

16. In the alternative, Plaintiff is entitled to recover from Jackson Fulgham under a theory of quantum meruit for the reasonable value of his services rendered in the amount of $139,200.00.

Fulgham argues it is inappropriate for the trial court to enter alternative conclusions of law based in contract and quantum meruit. In addition, Fulgham challenges the amount of damages awarded.

Quantum meruit is an equitable remedy which does not arise out of a contract but is independent of it. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex.1988). This remedy is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex.2005) (orig. proceeding). To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished, (2) to the person sought to be charged, (3) which services or materials were accepted, used and enjoyed by that person, (4) under such circumstances as reasonably notified the

person sought to be charged that the plaintiff in performing such services was expecting to be paid by him. *Vortt Exploration*, 787 S.W.2d at 944 (citing *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex.1985)); *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 795 (Tex.App.-Dallas 2007, no pet.). On appeal, Fulgham argues the evidence is insufficient to prove two of the required elements of Fischer's quantum meruit claim: (1) that Fischer provided services for the benefit of Fulgham and (2) that Fischer identified Fulgham as the "person sought to be charged."

Eagle hired Fulgham as its appraiser. Fulgham assembled a team of approximately fifty people, including Fischer, to assist in the appraisal process. The record contains evidence that Fulgham and Eagle negotiated an agreement whereby Eagle would assign its insurance claim to CRW, LLC, one of Fulgham's companies. In the event CRW was successful in obtaining insurance proceeds from Travelers, CRW would pay Eagle 49% of any monetary recovery, less all costs of recovery. Fulgham testified he did not sign the agreement; however, on cross examination, he stated that the agreement was the template for how the appraisal was to be conducted. The record also contains evidence that Eagle and Insurance Appraisal Service (IAS), another of Fulgham's companies, had a second agreement. According to this agreement, also unsigned, IAS would fund the expenses of the appraisal and after the appraisal was complete, Eagle would pay IAS's fee which would consist of the expenses of the appraisal and the hourly rates charged for members of the appraisal team. Under either scenario, it appeared that compensation for members of the appraisal team would come through Fulgham or one of his companies. Fulgham testified that everyone on the appraisal team knew that the insurance

proceeds from Travelers would be the ultimate source of their compensation. However, Fulgham points to no evidence that he was not the person ultimately expected to make payments to his appraisal team after receiving his portion of the insurance proceeds.

Fulgham argues Fischer's claim for quantum meruit fails because Fischer was working for (providing services for the benefit of) Eagle, not Fulgham. Fischer, a certified public accountant, testified he was hired by Fulgham in June 2006, to provide various accounting services in support of the Eagle appraisal. Fulgham asked Fischer to sign a consultant services, confidentiality, and non-disclosure agreement with Claims Reporting US, FinLab LLC, Insurance Appraisal Service, Professional Fee Collection, Jackson Fulgham, and any other related entity now formed or yet to be formed under ownership of the entities listed above related to the Insurance Damage Appraisal Business ("Company"). The agreement, prepared by Fulgham or his attorney, detailed Fischer's duties as a consultant for the "Company." Fischer testified his consulting services included calculating the extra expenses incurred by each of the twelve properties involved in the Eagle appraisal, determining lost rents and business interruption expenses for each property, and providing general consulting services. General consulting services included visiting each property, developing strategy, working on spreadsheets and the appraisals, obtaining experts, attending appraisal meetings, and giving presentations. Fischer acknowledged the work was performed in support of the Eagle appraisal; however, Fischer testified that he performed these tasks at the request and direction of the appraiser, Fulgham.

Fulgham also argues Fischer's claim for quantum meruit fails because Fischer

looked to Eagle to be paid, not to Fulgham. Fulgham and Fischer discussed Fischer's compensation before Fischer joined the appraisal team. According to the evidence, they discussed whether Fischer's compensation would be based on the $150 per hour rate requested by Fischer or the possibility of an adjustable percentage depending on the amount of the recovery. In the consulting agreement between Fischer and "Company," the compensation provision was blank so Fischer wrote in the amount of $150 per hour. Fischer testified that although Fulgham never expressly agreed to pay him $150 per hour, Fulgham never gave any indication that he disagreed or disputed Fischer's hourly rate. Fischer testified that he understood that this was not the type of project on which he would be paid every month, and he was willing to operate under those terms as long as he received $150 per hour. In addition to providing each member of the appraisal team with a consulting agreement, Fulgham provided Fischer and the other members of the appraisal team with a 1099 form.

As part of his accounting duties, Fischer prepared worksheets for Fulgham estimating amounts due to the contractors on the appraisal project, based on hours worked and the hourly rate for each contractor. Fischer periodically updated these worksheets at Fulgham's request. Fischer testified Fulgham never questioned or disputed the hours worked or the hourly rates reflected on the worksheets.

Fischer admitted that in March 2007, he prepared and submitted an invoice to Eagle. He testified that he sent the invoice for two reasons. First, he was very ill, the appraisal process was winding down, and he needed the money. Second, he knew settlement discussions were underway between Eagle and Travelers, and that Eagle had repeatedly asked Fulgham to provide

information detailing how much was owed to his contractors. Fischer sent the invoice to Eagle to let them know there were substantial sums of money due to a number of people who had put in many hours on the appraisal project. Fischer wanted Eagle to take contractor expenses into consideration during settlement discussions. Fischer testified he did not really expect to receive any money from Eagle.

Eagle and Travelers finally settled their dispute in May 2008. Fischer testified that once the settlement took place, the appraisal team did not get paid. On May 19, 2008, Fulgham sent an e-mail to Eagle's attorney attaching the agreement between Eagle and CRW and complaining that Eagle was refusing to pay for the appraisal services as agreed. Eagle refused to pay Fulgham until his contractors signed releases. The contractors, including Fischer, refused to sign releases until they were paid.

After considering all the evidence supporting and contradicting the trial court's findings of fact numbers 7 through 10, we conclude the findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. See Cain, 709 S.W.2d at 176. Fischer was hired by Fulgham. Fischer was asked to sign a consulting, confidentiality, and non-disclosure agreement with Fulgham and his companies, not with Eagle. Fischer discussed his requested hourly rate of compensation with Fulgham. Throughout the appraisal process, Fischer's consulting work was directed and managed by Fulgham, not by Eagle. Fischer prepared worksheets for Fulgham at Fulgham's request, detailing the number of hours worked, hourly rates, and amounts due the core members of the appraisal team. Although Fischer understood that the Travelers' insurance proceeds would be the ultimate source of compensation for the appraisal team, he was also aware of the terms of Fulgham's agreements with Eagle regarding payment of the costs of the appraisal. Accordingly, we agree with the trial court that Fischer rendered valuable services to Fulgham, the person sought to be charged. See City of Keller, 168 S.W.3d at 822.

With respect to his legal sufficiency challenge, Fulgham failed to demonstrate there is no evidence to support the adverse findings. Pete Dominguez Enterprises, 188 S.W.3d at 387. Because there is more than a scintilla of evidence that Fischer was providing services for the benefit of Fulgham and that Fischer looked to Fulgham as the person who would pay him for the services he performed as part of the appraisal team, Fulgham's legal sufficiency challenge fails. See Formosa Plastics Corp., 960 S.W.2d at 48; see also King Ranch, 118 S.W.3d at 751.

Fulgham did not dispute the remaining elements of Fischer's quantum meruit cause of action—that Fischer provided valuable services and that such services were accepted, used and enjoyed by Fulgham. Accordingly, based on our analysis above, we conclude the evidence is legally and factually sufficient to support Fischer's claim for quantum meruit. We uphold the trial court's conclusion of law that Fischer is entitled to recover from Fulgham under the theory of quantum meruit. See Stable Energy, 999 S.W.2d at 547 (conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence).

### Damages

Fulgham also challenges the trial court's finding of fact number 10 because the court entered a finding of $139,200.00 as the reasonable value of Fischer's services. Fulgham challenges findings of fact numbers 11 and 12 as to pre-judgment and post-judgment interest because the

amounts calculated are based on the trial court's finding of $139,200.00 as the proper amount of damages. Fulgham argues that because Fischer's second amended petition and request for disclosure pleads for $101,250.00 in damages, an award in the amount of $139,200.00 is contrary to Fischer's pleadings and inappropriate. According to the record, Fischer's second amended petition states "the reasonable value of the services provided by Plaintiff Fischer is *at least* $101,250.00" (emphasis added).

At trial, Fischer testified that he had worked at least 928 hours on the appraisal. He also testified that the reasonable value of the services he provided Fulgham was $139,200.00. In challenging the amount of damages awarded to Fischer, Fulgham provides no legal authority or analysis in support of his argument that the amount of Fischer's damages are limited to $101,250.00. Therefore, we conclude Fulgham's complaint as to the amount of damages, pre-judgment interest and post-judgment interest is waived. *See Valadez*, 238 S.W.3d at 845; *see also* Tex.R.App. P. 38.1(i). Even if we were to find Fulgham's complaint was not waived, Fischer's pleading sought an amount of *"at least"* $101,250.00, and the evidence at trial clearly supports the $139,200 awarded by the trial court. Fulgham's third issue is overruled.

### Other Issues

Because the trial court's judgment was based on alternative grounds and can be sustained under the legal theory of quantum meruit, we need not address Fulgham's first (breach of oral contract), second (breach of written contract), and fourth (unjust enrichment) issues. Tex. R.App. P. 47.1. Fulgham's fifth issue, "whether the state of the trial record requires this Court to reverse and render judgment in favor of Appellant that Appellee take nothing," appears to summarize the arguments made by Fulgham in issues one through four. Fulgham provides this Court with no citation to the record or legal authority to support his fifth issue. Accordingly, Fulgham's fifth issue is waived. *See Valadez*, 238 S.W.3d at 845; *see also* Tex.R.App. P. 38.1(i).

### Conclusion

Based on our conclusions above, we affirm the trial court's judgment.