**Affirm and Opinion Filed September 29, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-18-01223-CV**

**IN THE INTEREST OF I.S., A CHILD**

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-55837-2013**

## MEMORANDUM OPINION

Before Justices Osborne, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

This is an appeal from the trial court's order (1) denying any and all relief requested by I.S.'s mother in her Second Amended Petition to Modify Parent Child Relationship and (2) denying her Application for Temporary and Permanent Injunctions (the "Order"). We affirm.

### Background

I.S.'s parents ("Mother" and "Father") resolved the termination of their relationship through a mediated settlement agreement, which became the basis for the trial court's April 14, 2015 Agreed Final Order in Suit Affecting the Parent-Child Relationship (the "Agreed Order"). At all relevant times, Father has resided in Tennessee, and Mother has resided in Texas; I.S.'s primary residence is in Texas

with Mother. I.S. is the parents' only child. He was ten years old at the time of trial. The Agreed Order named the parents his joint managing conservators. The Agreed Order also set forth an agreed schedule for access to and possession of I.S. For our purposes, the significant provisions included the following terms of possession for Father: every other weekend during the school year; every Spring Break; and I.S.'s entire summer vacation from school, except that Mother has the right to possession every other weekend during that time.

*The Petition for Modification*

On March 15, 2016, Mother filed her Petition in Suit to Modify Parent Child Relationship. Under the heading Modification of Conservatorship, Possession, and Access, she asserted:

> The circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified. There is severe conflict between the child's parents escalating to the point that the parents can no longer reach shared decisions about the child and are unwilling to communicate.

> Petitioner requests the Court to appoint a parenting facilitator to resolve parental conflicts. This case is a high-conflict case. There is good cause for appointment of a parenting facilitator because there is severe conflict between the child's parents, and the appointment would be in the best interest of the child.

Mother also filed an independent motion asking to have a parenting facilitator appointed; the trial court granted the motion, and both parents began sessions with Linda Threats, Ph.D.

Shortly after, Mother filed an amended petition in the modification proceeding. The amended petition included the above-quoted request for a parenting facilitator, and it added the following after the assertion that the parents could no longer reach shared decisions and were unwilling to communicate:

> Consequently, the present order and summer possession schedule are unworkable and are not in the child's best interest.

> * * *

> Petitioner requests that the Court modify the current summer possession schedule to a standard summer possession schedule under section 153.313 of the Texas Family Code. Specifically, Petitioner requests that Respondent designate his summer possession by April 1 and if designated, be allowed to have possession of the child for forty-two (42) consecutive days with two non-consecutive weekends allotted to be exercised [by] Petitioner if designated by April 15.

> The requested modifications are in the best interest of the child.

This issue of summer possession dominated discovery and was a significant issue during trial.

In addition, approximately a week before trial, and over Father's objection, Mother amended her petition a final time, expanding her requested modifications to include, among a number of additional proposals, limiting Father during the school year to eighteen overnight periods of possession in DFW, alternating Spring Break possession, and requiring Father to submit to drug testing.

*The Non-Disclosure Agreement*

Shortly after mediating the Agreed Order issues concerning I.S., the parties also entered into a Non-Disclosure, Non-Disparagement, and Confidentiality

Agreement (the "Non-Disclosure Agreement"). The parties agreed not to disclose confidential information about each other, significant others, or family members. Mother contended below that Father disclosed confidential information referenced in subsection (b) of the Non-Disclosure Agreement, which states:

> [1] Private and confidential information which is not generally known to the public pertaining to the parties, family, friends, spouses, significant others or business associates, including without limitation the parties' health and medical information, business, financial and legal information, and information concerning the parties' future relationships (and the existence thereof), professional and personal relationships, sexual matters, religious practices and beliefs, private residences (and the details thereof), private email addresses, Personal Identification Numbers, social security numbers and credit card information. [2] Without limiting the aforementioned, the parties agree that they will not publish any book or article, blog, make any post on the internet or in any form of social media, give any interview, appear in or on any media production or give information to the media wherein or whereby they disclose any Confidential Information. [3] The parties recognize that, as a general rule, any information regarding the other party to this Agreement and his or her respective family members, spouse, and/or significant other is private and confidential. [4] Even if any Confidential Information shall have been somehow disclosed in the public domain, the parties agree that they will not confirm or deny the existence of the Confidential Information in the matter or the truth or falsity of the disclosed Confidential Information and such disclosed Confidential Information shall remain subject to the terms of this Agreement.[1]

Mother's allegations stem from publication online of an article on the website Radar Online that concerned Mother's relationship with a celebrity. The first portion

---

[1] Mother does not allege that Father disclosed tangible material (e.g., documents, emails, photographs) prohibited by subsection (a) of the Non-Disclosure Agreement or information related to their legal proceedings prohibited by subsection (c). We number the sentences in the quoted provision for reference in our discussion below.

of the brief article includes quotes from Father that were obtained in a telephone interview.[2] The article suggests that Father gave a critical reason for why Mother was dating the celebrity and that Father had "rip[ped]" her for that reason. The article also asserts that Father "wants nothing to do with" the celebrity and that he "revealed" that his relationship with Mother was "rocky." The article goes on to repeat information about Mother's relationship that had already been published on that site.

*Proceedings Below*

Mother called the parties' parental facilitator, Dr. Threats, to testify first. She had worked with Mother in person and Father by telephone and Skype. She identified the parties' relationship as "high conflict." She presented lengthy "clinical assessments" of both parties, identifying positive, negative, and neutral characteristics of both parents. Counsel questioned her concerning Mother's allegations against Father. A number of them, Dr. Threats asserted, had been discussed and were not concerns for her—she included Mother's allegations concerning corporal punishment in this group. Among her concerns involving Father that remained were allegations of "extreme punishment" and a drug test that was positive for marijuana. She said that if she had a concern about Mother, based on the

---

[2] Father quarrels with identifying the conversation as an interview and asserts that he did not know the caller was a reporter. Mother correctly responds that the Non-Disclosure Agreement, on its face, restricts disclosure of confidential information to any person, not only to media representatives.

high level of conflict between the parents, it would be that she can be overprotective. When asked whether the parties had "a good handle" on what is in the best interest of I.S., Dr. Threats answered that Mother did, but that Father did "[n]ot at all times."

Mother testified concerning her allegations that Father refused to communicate with her and interfered with I.S.'s communications with her when the child was with Father. She described incidents of Father's punishing I.S. that she objected to, and she expressed concern about lack of supervision and a regular bedtime when I.S. was with Father.[3] She explained that she wanted the modification so that she could have time with I.S. outside of the school year and so that he could spend more extended time with her family.

Father responded to Mother's allegations and described I.S.'s time with Father, his wife, and I.S.'s half-brothers as happy. He believed it would be harmful to I.S. to lose that extended time with his family. Father testified that the parties had purposefully structured their parenting plan: they agreed to Father's extended visitation during I.S.'s vacations because Mother wanted to move with I.S. from Tennessee to Texas.

The parties introduced emails and texts that exemplified their communication and communication issues. Father's wife also testified concerning I.S.'s time with their blended family.

---

[3] We address specific examples of Mother's allegations and Father's responses below.

The trial court issued a memorandum containing a single finding: "The Court finds that there has not been a material and substantial change to warrant a change in the possession and access schedule." The trial court incorporated that finding into its Order, denied Mother's request for modification, and denied all requested relief in her injunction application. Mother appeals.

## Modification of the Agreed Order

In her first issue, Mother argues the trial court erroneously determined that there had not been a material and substantial change in circumstances warranting modification of the Agreed Order. We review the trial court's decision to deny Mother's request for modification for an abuse of discretion. *Seidel v. Seidel*, 10 S.W.3d 365, 368 (Tex. App.—Dallas 1999, no pet.). "There is no abuse of discretion so long as some evidence of a substantive and probative character supports the trial court's decision." *In re M.M.S.*, 256 S.W.3d 470, 476 (Tex. App.—Dallas 2008, no pet.). In determining whether some evidence supports the decision, we review the evidence in the light most favorable to that order, and we indulge every presumption in its favor. *See In re G.E.D.*, No. 05-17-00160-CV, 2018 WL 258982, at *5 (Tex. App.—Dallas Jan. 2, 2018, no pet.) (mem. op.).

The Texas Family Code permits a trial court to modify possession of a child if the modification is in the child's best interest and the circumstances of the child, a conservator, or other party affected by the existing conservatorship order have materially and substantially changed since the rendition of the existing order. TEX.

–7–

FAM. CODE ANN. § 156.101(a)(1)(A).[4] To prove that a material and substantial change of circumstances has occurred, the evidence must show the conditions that existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the hearing on the petition to modify. *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.). As the party seeking modification, Mother had the burden below to show the requisite material and substantial change in circumstances since the entry of the previous order. *In re C.C.J.*, 244 S.W.3d 911, 918 (Tex. App.—Dallas 2008, no pet.). "A court's determination as to whether a material and substantial change of circumstances has occurred is not guided by rigid rules and is fact specific." *Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied).

Mother alleges that "severe conflict" has arisen between the parties since the time of the Agreed Order. She contends that Father is unwilling to communicate with her and gives two examples: (1) having I.S. give her messages about scheduling

---

[4] The statute states:

> The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
>
> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . .
>
> (A) the date of the rendition of the order.

FAM. § 156.101(a)(1)(A).

such as pick-up times, and (2) arguing with her at one of I.S.'s football games—when I.S. was present—concerning whether I.S. could spend the night with Father.[5] Mother characterizes this conduct as "hostile" and "aggressive." Mother also alleges that Father has intentionally attempted to harm her relationship with I.S. She complains that Father has prevented I.S. from contacting her while in Father's possession and that he has monitored I.S.'s calls with her. Mother's remaining arguments suggest that Father mistreats I.S. And she charges that Father "began to smoke marijuana," engaged in abusive discipline of I.S., and failed to enforce an appropriate bedtime for the child.

Father's testimony responded to Mother's allegations; the following are examples of his testimony.

- Mother alleges that Father thwarted contact between her and I.S. But Father and his wife both testified that when I.S. is with them, they encourage I.S. to call Mother every day as the Agreed Order requires. Mother did not refute that testimony.

- Mother testified that Father took away I.S.'s cell phone; Father explained he did so only when I.S. and Father's other children would not settle down for bed.

---

[5] Father had come to town to see the game. The Agreed Order required Mother to "make every effort to allow Father additional time with the child, upon reasonable notice, when Father is in the area of the child's residence."

- Mother complained that I.S. had no set bedtime. Father acknowledged this is true but pointed out that when I.S. is with him, it is the child's vacation, and strict schedules are not necessary.

- Mother stated that Father monitors I.S.'s calls and texts with Mother; Father denies ever doing so.

- Father acknowledged that he occasionally uses marijuana, away from the house, to address the pain he experiences following his football career.

- Father also acknowledged being placed on administrative leave by his current employer, a high school where he worked as the football coach, for conduct that included his use of vulgar language around students and his having students practice contrary to medical advice.

- Mother's complaints about abusive or "extreme" punishments were strongly disputed. She alleges that Father uses corporal punishment; Father says he may have spanked I.S. once—with his hand—but that was when the parents were together. Dr. Threats testified that she did not believe corporal punishment was an issue. Likewise, Dr. Threats acknowledged that performing household chores—cleaning up after family pets and washing the car—could be appropriate punishments. And while she expressed concerns about Father's punishing the boys one time by burning their shoes, which Father said was an effort to

address his concerns about their behavior and materialism, Father agreed it had not been a good idea and stated he would not repeat it. In the end, Dr. Threats testified that while Father's punishments might make the child unhappy, they were not abusive.

We conclude that there is conflicting evidence concerning Mother's charges of inappropriate conduct by Father toward her and I.S. The trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *In re J.M.*, No. 05-15-01161-CV, 2017 WL 563341, at *2 (Tex. App.—Dallas Feb. 13, 2017, no pet.) (mem. op.). We conclude that Father presented some evidence of a substantive and probative character that supports the trial court's decision. *See In re M.M.S.*, 256 S.W.3d at 476.

Moreover, Mother's burden was to establish that circumstances—in this case, Father's behavior— had materially and substantially *changed* since the Agreed Order. FAM. § 156.101(1)(A). To carry this burden, she had to show what conditions existed at the time of the entry of the Agreed Order and compare those conditions to the circumstances at the time of the hearing in this case. *See In re A.B.P.*, 291 S.W.3d 91, 96–97 (Tex. App.—Dallas 2009, no pet.). Mother's testimony concerning conditions at the time of the Agreed Order is scant and was elicited primarily from Father's counsel's questioning. She testified that the break-up had engendered "extensive litigation." She conceded that, at that time, she made allegations that

–11–

Father was emotionally abusive to her and that he was controlling. She testified she did not then remember making allegations that he was verbally abusive, but she agreed that he was. Our record does not support a conclusion that the "high-conflict" nature of the parents' relationship was something new or different after the Agreed Order. *See id.* at 96 ("And although Mother and Father both indicated in their testimony that they continued to have difficulty communicating and getting along with each other, there is no evidence that the difficulty was new or different since the entry of the prior order.").

Finally, in the specific area that Dr. Threats appeared to consider the most troubling—Father's smoking marijuana—Mother also failed to establish changed circumstances. Father testified he began smoking marijuana while he and Mother were together around 2012 or 2013. Mother acknowledged that she had smoked marijuana with him once during that time. While the trial court could have disapproved of Father's behavior in this regard, even for purportedly medical reasons stemming from past football injuries, Mother did not establish that Father's conduct had changed since the Agreed Order in any material or substantial way. Absent evidence of such a change, the evidence does not support modification of the parenting plan in the Agreed Order.

We discern no abuse of discretion in the trial court's determination that there had been no material and substantial change in the relationships between and among the members of this family. We overrule Mother's first issue.

## The Non-Disclosure Agreement

In her second issue, Mother contends that the trial court erred in determining that Father did not breach the Non-Disclosure Agreement and by denying Mother's request for permanent injunctive relief and attorney's fees. The Texas Supreme Court has recently confirmed that we are to review a trial court's refusal of a permanent injunction—as we do a temporary injunction—for an abuse of discretion. *Pike v. Tex. EMC Mgmt., LLC*, No. 17-0557, 2020 WL 3405812, at *23 (Tex. June 19, 2020). A party is entitled to a permanent injunction if she proves (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law. *Id.* In this case, the wrongful act Mother was required to prove was a breach of the Non-Disclosure Act.

Mother contends that the trial court's Order is contrary to the great weight and preponderance of the evidence. We understand her argument to be a claim of factual insufficiency of the evidence to support the trial court's implied finding that Father did not breach the Non-Disclosure Agreement.[6] When a party attacks the factual sufficiency of an adverse finding on an issue on which she had the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242

---

[6] In the absence of findings and conclusions, the judgment of the trial court implies all necessary fact findings in support of the judgment. *G.T. Mgmt., Inc. v. Gonzales*, 106 S.W.3d 880, 883 (Tex. App.—Dallas 2003, no pet.). When a reporter's record is brought forward, as it is here, an implied finding is subject to a factual sufficiency challenge. *Sproul v. Sasser*, No. 05-08-00502-CV, 2009 WL 2232240, at *2 (Tex. App.—Dallas July 28, 2009, no pet.) (mem. op.).

–13–

(Tex. 2001). We consider and weigh all of the evidence, and a finding may be overturned only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re L.A.F.*, 270 S.W.3d 735, 739 (Tex. App.—Dallas 2008, pet. denied).

Mother argues that Father violated the Non-Disclosure Agreement by "extensively comment[ing] on his relationship with Mother and his opinion about Mother's dating relationship with a celebrity." Father testified that he understood the phone call at issue to have been looking for information about his football career. He stated that when the caller would intermittently ask a question about Mother or her relationship with the celebrity she was dating, he would attempt to deflect the caller from that subject with his responses. He testified that his answers were then misused by Radar Online, which placed his responses in incorrect context. For example, when the caller asked Father about Mother's personal styling business, he responded that it appeared to be a good opportunity for her. But the article quoted that response as if Father had commented that Mother's relationship with the celebrity was a good opportunity for her.

Only Father testified to the actual exchange between himself and the caller. The trial court, as finder of fact in this case, was the sole judge of his credibility. *See Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). We conclude the trial court could have read the quotes attributed to Father to support his

testimony that he tried *not* to talk about Mother or anything substantive about her relationship. Those quotes, absent context provided by Radar Online, were:

- "I don't want to be part of that."

- "I don't think he's a bad guy; I don't know him."

- "We have limited communication."

- "As long as she's off my back, I'm all for it. If she's happy, she's happy. They can do whatever they want to do."

- "It seems like a good opportunity for her; I think that's working."

When read in a neutral light, the trial court could have determined that these statements by Father did not disclose confidential information concerning Mother or concerning her relationship with the celebrity. No quote in the above list discloses the kind of personal or sensitive information listed in sentence [1] of the Non-Disclosure Agreement.[7] Indeed, to the extent Father refers in any way to Mother's relationship with the celebrity, he disclaims knowledge of or concern with the relationship. Even given the sweeping breadth of sentence [3]'s assertion that "as a general rule, any information regarding the other party to this Agreement and his or her respective family members, spouse, and/or significant other is private and confidential," the trial could have concluded that Father disclosed no substantive

---

[7] Again, that list includes: "health and medical information, business, financial and legal information, and information concerning the parties' future relationships (and the existence thereof), professional and personal relationships, sexual matters, religious practices and beliefs, private residences (and the details thereof), private email addresses, Personal Identification Numbers, social security numbers and credit card information."

information concerning Mother in these quotes. And as to sentence [4]'s admonition that the parties are not to "confirm or deny" confidential information that has entered the public domain, the article itself establishes that Father did not confirm the existence of Mother's relationship with the celebrity—a member of her own family did.[8]

The only evidence contrary to Father's testimony is the article itself. When considering the article, the trial court could have given weight to the tenor and tone of the site. Following the body of the article, the site invites readers to "EXPLORE THIS STORY" and refers them to three earlier articles concerning the relationship on the site. It then asks: "Why do you think they're keeping their romance a secret? Tell us in the comments!" And the page concludes with the following acknowledgement:

> We pay for juicy Info! Do you have a story for RadarOnline.com? Email us at tips@radaronllne.co111, or call us at (866) ON-RADAR (667-2327) any time, day or night.

The trial court could have concluded that the site's emphasis was on promoting a "juicy" story in a fashion that would bring readers, comments, and further exploration on the site. The court could have determined that Father's testimony that the site misstated the context of his remarks was more credible than the site's version of the quoted remarks.

---

[8]  The article states, "Radar broke the relationship news earlier this month when [Mother's] cousin confirmed the secret romance."

We conclude the trial court's implied finding that Father did not breach the Non-Disclosure Agreement was not contrary to the great weight and preponderance of the evidence; nor is that finding clearly wrong and unjust. *See In re L.A.F.*, 270 S.W.3d at 739. Factually sufficient evidence supports the finding. We overrule Mother's second issue.

## Conclusion

We affirm the trial court's Order.

<table>
<tr><td></td><td>/Bill Pedersen, III//</td></tr>
<tr><td>181223f.p05</td><td>BILL PEDERSEN, III<br>JUSTICE</td></tr>
</table>



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF I.S., A CHILD

No. 05-18-01223-CV

On Appeal from the 469th Judicial District Court, Collin County, Texas Trial Court Cause No. 469-55837-2013.
Opinion delivered by Justice Pedersen, III. Justices Osborne and Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Gerald Sensabaugh recover his costs of this appeal from appellant Kristin Smith.

Judgment entered this 29th day of September, 2020.