**REVERSE in part; REMAND in part; AFFIRM and Opinion Filed August 22, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01298-CV**

**BRADFORD PLACE APARTMENTS, Appellant**
**V.**
**TED RAWLINGS AND CAITLIN KENNEDY, Appellees**

**On Appeal from the County Court at Law No. 2**
**Hunt County, Texas**
**Trial Court Cause No. CC2200074**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Goldstein
Opinion by Justice Goldstein

Bradford Place Apartments appeals the trial court's judgment in favor of Ted Rawlings and Caitlin Kennedy in this landlord-tenant repair or remedy dispute. In two issues, Bradford argues the trial court erred in ruling for Rawlings and Kennedy on their repair or remedy case because they failed to comply with certain provisions of the property code and in awarding Rawlings and Kennedy attorney's fees. We reverse and remand in part and affirm in part.

## BACKGROUND

In April 2022, Rawlings and Kennedy initiated repair and remedy proceedings in justice court against Bradford alleging that a pipe burst and flooded their apartment, rendering it unlivable and unsafe. The petition requested a court order to repair or remedy the condition; "all housing, living, and moving costs for period not in unit"; a civil penalty of one month's rent plus $500; attorney's fees; and court costs. The justice court entered judgment in favor of Rawlings and Kennedy and awarded them $1699.99 as a civil penalty and $1700.51 as actual damages.

Bradford appealed to the county court. At a trial de novo in May 2022, Rawlings and Hoffman testified with regard to the substance of the repair and remedy dispute and we provide only those facts necessary for a resolution of the issues raised on appeal.[1]

Rawlings testified he and Kennedy moved into apartment 412 at Bradford in June 2019 and renewed the lease in 2020 and again in 2021.[2] As of February 28, 2022, the lease on the apartment was paid in full through February 28, 2022, and there was a $134.04 credit balance on the account. Rawlings and Kennedy had previously had "an ongoing guest bathroom toilet issue which had been reported multiple times to multiple managers." As recently as January 18, Rawlings had a

---

[1] Bradford does not challenge the amounts alleged as a result of the disposition in favor of Rawlings and Kenney, including attorneys' fees, only the liability for failure to meet the statutory requirements for entitlement.

[2] The parties admitted various videos which were shown to the court of apartment 412: one of the flooding event, one of the condition on March 7th, and several depicting the condition of apartment 414. Also in evidence were text messages and the lease, admitted by agreement at the commencement of trial.

telephone conversation with Chasadie Hoffman, the "new property manager" about the issue. Hoffman agreed that the file contained a complaint about the toilet constantly running.

On the night of February 28, 2022, Rawlings and Kennedy went to sleep and woke up after midnight to "significant water flooding" and water coming out of the guest room toilet. There was "water everywhere in the apartment" and "significant water damage throughout the entire apartment." Rawlings immediately reported the flooding via an email and a phone call to Hoffman. Hoffman did not answer, and neither did the maintenance line for 24-hour maintenance emergencies, so Rawlings left voicemails.

Hoffman and maintenance arrived the next morning to address the water leak. Between March 1st and March 4th, Bradford endeavored to clean up from the water leak, but the apartment had a bad odor and both parties ultimately agreed Rawlings and Kennedy had to move out of 412. Apartment 414 was identified as an option, but it required work to be made ready.

On Friday, March 4, Rawlings and Kennedy moved out of 412. Bradford paid for Rawlings and Kennedy to stay at the Magnuson hotel "for two nights, for Friday night and Saturday night." The contentious factual dispute commenced on March 7th, relative to the availability of units 412 and 414, as well as other purported remedies offered and rejected. When unit 414 was not ready on March 7th, Rawlings and Kennedy returned to the Magnuson. Thereafter, Rawlings and Kennedy were

–3–

locked out of both units. Bradford did not provide Rawlings and Kennedy with another acceptable place to live and did not refund any rent or their security deposit. Rawlings testified to out-of-pocket expenses incurred for not being able to occupy either 412 or 414, including the Magnuson for thirteen nights, meals, and electricity charges incurred during the failed attempt to relocate to 414.

Rawlings and Kennedy had paid their March rent "the same way that [they] always [had] for almost three years," "by rote," and the payment portal indicated they "paid $1,055." Bradford did not notify Rawlings and Kennedy that they were behind on their rent; rather, Rawlings discovered "there was a $9 shortage" when doing his bookkeeping while displaced, and he corrected the shortage the following week. Rawlings testified that, at the time Rawlings and Kennedy filed their repair and remedy case, their rent was paid in full. Bradford's counsel objected that, [u]nder the statute, you have to be paid at the time that you sent your notice, which was on the 1st of March." Counsel complained that Rawlings was "testifying now that he made it current at the time he filed the lawsuit," and "you can't bring a lawsuit unless you're current at the time of the notice." Rawlings and Kennedy's counsel responded that Bradford was "notified of an event on March 1st" but "not notified of a repair and remedy at that time." The trial judge said he was "not going to do a directed verdict based on those facts" and proceeded with Rawlings' testimony.

On March 18, Rawlings and Kennedy filed their petition to repair and remedy asserting that they were never notified an apartment was repaired and ready for them

to reoccupy. Bradford sent them a notice of eviction "for harassment"[3] and "then the tiny holes in the walls was on the other notice that was listed in the apartment as well underneath the dart board."

In closing argument, Rawlings and Kennedy's counsel stressed that they were not in default on their rent when they gave the notice of the need for repair. Their rent was not due until midnight on March 1, and they were not "in default on the rent until at the earliest March the 2nd." Bradford's counsel responded that Rawlings did not check a box on his petition that would have indicated he was current on his rent, so according to Rawlings' pleadings, he was delinquent on his rent. Counsel argued Bradford's efforts did not "meet the culpability that should be awarded under a repair and remedy case," and "[n]othing could be done to satisfy" Rawlings and Kennedy. At the conclusion of trial, the trial court stated that, after hearing the evidence and reviewing the testimony and exhibits, it found in favor of Rawlings and Kennedy and awarded them "the single penalty" of one month's rent plus $500 totaling $1,699.99, damages of $1,751, and $2,200 in attorney's fees. On November 14, 2022, the trial court entered judgment in conformity with its oral award. This appeal followed.

---

[3] Hoffman testified as to the alleged harassment that formed the basis of the eviction notice.

## ANALYSIS

In its first issue, Bradford asserts the trial court erred in ruling in favor of Rawlings and Kennedy on their repair and remedy case under property code sections 92.052 and 92.056 because they:

> a. failed to send two written notices to repair conditions to Bradford, as required under the statute;
> b. failed to provide any evidence that the condition materially affected their physical health and safety;
> c. failed to show they were not delinquent in rent when they sent their notices; and
> d. failed to give Bradford a reasonable time to repair or remedy the condition; and consequently,
> e. were not entitled to damages under §92.056(e).

Because the trial court entered findings of fact and conclusions of law, Bradford argues, they are reviewable for legal and factual sufficiency to support them.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When the appellate record contains a reporter's record, as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id.* We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Unchallenged findings of fact are binding on the parties and the reviewing court. *Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 658 (Tex. App.—Dallas 1993, writ denied).

–6–

When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet). When reviewing the record, we determine whether any evidence supports the challenged finding. *Id.* If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Id.*; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions").

When an appellant challenges the factual sufficiency of the evidence, we consider all the evidence supporting and contradicting the finding. *Sheetz*, 503 S.W.3d at 502. In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Fulgham*, 349 S.W.3d at 157. The trial court may choose to believe one witness over another, and we may not impose our own opinion to the contrary. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Fulgham*, 349 S.W.3d at 157 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

When a party challenges a trial court's conclusions of law, we review the challenged conclusions de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court's conclusions of law are not subject to

challenge for lack of factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.*; *Dallas Cnty. v. Sweitzer*, 881 S.W.2d 757, 763 (Tex. App.—Dallas 1994, writ denied); *see also Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.) (trial court's conclusions of law are independently evaluated to determine whether trial court correctly drew legal conclusions from facts). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502.

On March 8, 2023, the trial court entered findings of fact and conclusions of law which read in their entirety as follows:

## FINDINGS OF FACT

The Court finds that the material allegations contained in Plaintiffs' Original Petition are true and that the requested relief should be granted.

The Court further finds:

A. This case was heard by this Court de novo following appeal by Defendants from judgement rendered in a proceeding in Justice Court, Precinct No. 2 under Cause No. 21 RR220002.

B. The issue in the case was whether Plaintiffs were entitled to statutory and compensatory damages arising out of a water leak in an apartment unit demised to Plaintiff.

C. The water leak rendered the demised premises unfit for habitation.

D. Plaintiff gave Defendant immediate notice of the water leak.

E. The Defendant was not able to repair the demised premises or to provide a substitute apartment.

F. Plaintiffs were not delinquent in the payment of rent at the time of notice of the water leak condition was given to the Defendant.

G. Due to the condition of the premises Plaintiff was compelled to relocate to a motel for 13 days and incurred the additional costs of meals until Plaintiffs could secure an alternative place of abode.

H. The Plaintiffs incurred a charge from the electric utility company of $150.00 for electric services to an apartment offered a substitute but which apartment was not adequate.

I. The Plaintiffs incurred legal fees for hiring attorney to represent them who charged $2,200.00.

## Conclusions of Law

A. The Court has jurisdiction.

B. The Defendant landlord was not able to repair or remedy the water leak condition to the apartment demised to Plaintiff in time required by statute.

C. Plaintiff is entitled to judgment for statutory civil penalty of one month's rent $1,199.99 plus $500.00.

D. Plaintiffs are entitled to judgment for $1,751.00 for their actual damages in securing alternate place to abode.

E. Plaintiffs are entitled to judgment for $2,200.00 attorney's fees: an amount appearing to be reasonable and necessary.

The pertinent provisions of the property code at issue are as follows:

Section 92.052 of the property code provides:

(a) A landlord shall make a diligent effort to repair or remedy a condition if:

(1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid;

(2) the tenant is not delinquent in the payment of rent at the time notice is given; and

(3) the condition:

    (A) materially affects the physical health or safety of an ordinary tenant; or

    (B) arises from the landlord's failure to provide and maintain in good operating condition a device to supply hot water of a minimum temperature of 120 degrees Fahrenheit.

TEX. PROP. CODE § 92.052.   An interrelated statute on which Bradford relies, section 92.056 of the property code, provides:

(a) A landlord's liability under this section is subject to Section 92.052(b) regarding conditions that are caused by a tenant and Section 92.054 regarding conditions that are insured casualties.

(b) A landlord is liable to a tenant as provided by this subchapter if:

    (1) the tenant has given the landlord notice to repair or remedy a condition by giving that notice to the person to whom or to the place where the tenant's rent is normally paid;

    (2) the condition materially affects the physical health or safety of an ordinary tenant;

    (3) the tenant has given the landlord a subsequent written notice to repair or remedy the condition after a reasonable time to repair or remedy the condition following the notice given under Subdivision (1) or the tenant has given the notice under Subdivision (1) by sending that notice by certified mail, return receipt requested, by registered mail, or by another form of mail that allows tracking of delivery from the United States Postal Service or a private delivery service;

    (4) the landlord has had a reasonable time to repair or remedy the condition after the landlord received the tenant's notice under Subdivision (1) and, if applicable, the tenant's subsequent notice under Subdivision (3);

    (5) the landlord has not made a diligent effort to repair or remedy the condition after the landlord received the tenant's notice under

Subdivision (1) and, if applicable, the tenant's notice under Subdivision (3); and

(6) the tenant was not delinquent in the payment of rent at the time any notice required by this subsection was given.

(c) For purposes of Subsection (b)(4) or (5), a landlord is considered to have received the tenant's notice when the landlord or the landlord's agent or employee has actually received the notice or when the United States Postal Service has attempted to deliver the notice to the landlord.

(d) For purposes of Subsection (b)(3) or (4), in determining whether a period of time is a reasonable time to repair or remedy a condition, there is a rebuttable presumption that seven days is a reasonable time. To rebut that presumption, the date on which the landlord received the tenant's notice, the severity and nature of the condition, and the reasonable availability of materials and labor and of utilities from a utility company must be considered.

Tex. Prop. Code § 92.056.

Bradford argues the trial court erred in ruling in favor of Rawlings and Kennedy because they (1) failed to send two written notices to repair conditions to Bradford, as required by the property code; (2) failed to provide evidence that the condition affected their physical health and safety; (3) failed to show they were not delinquent in rent when they sent their notices; and (4) failed to give Bradford a reasonable time to repair or remedy the condition.

The trial court found that "Plaintiff gave immediate notice of the water leak." As to the "two written notices" requirement, Bradford characterizes the email Rawlings sent on March 1, 2022, as the first written notice and complains that no second notice was given. Bradford cites the provision of Rawlings and Kennedy's lease that requires a "request or notice of repair" "MUST BE SIGNED AND IN

–11–

WRITING," essentially arguing that the first notice of the leak had to be the written one. However, the lease further provides that the "signed and in writing" requirement applies "except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water" or certain other circumstances. Here, the evidence showed the source of the leak was a toilet and involved "uncontrollable running water" that flooded the apartment. Thus, the terms of the lease excepted the situation in this case from the "signed and in writing" requirement.

Sections 92.052(a)(1) and 92.056(b)(1) require only that the tenant provide "notice." *See id.* §§ 92.052(a)(1), 92.056(b)(1). Rawlings testified that he communicated their dissatisfaction with the situation daily to "multiple personnel" at Bradford via texts, phone calls, and emails. It is not disputed that Rawlings and Kennedy were displaced and not in a Bradford apartment from and after March 4th. Hoffman agreed that there had been a prior complaint to a previous manager regarding the toilet constantly running and maintenance addressed the situation. Actual notice of the condition of the repairs and status of the proposed remedies are not at issue. Based on this evidence, the trial court could have found that they satisfied the requirement of 92.056(b)(3) that they provide a second written notice in accordance with the "material allegations contained in Plaintiffs' Original Petition" the trial court found were true.

The trial court found, and the evidence supported, that the water leak rendered the demised premises unfit for habitation. Regarding evidence that the condition

–12–

affected their physical health and safety, Rawlings testified the flooding came from a toilet and created a bad odor, Rawlings and Kennedy could not sleep without the windows open, and Hoffman herself told Rawlings and Kennedy that, in her opinion, "they needed to reside in a different unit." Hoffman tried to accommodate Rawlings and Kennedy's desire to stay in 412 "to see what we could do on any other way rather than having to make them move, but I didn't think that there would be an option." On March 4th, Hoffman "notified them that they're not going to be able to stay in that unit." The evidence supports the trial court finding that the "water leak rendered the demised premises unfit for habitation."

The trial court found, and the evidence supported, that Rawlings and Kennedy were not delinquent in the payment of rent at the time of notice of the water leak condition was given to Bradford. The testimony reflects that the water leak occurred after Rawlings and Kennedy went to sleep February 28th, and they woke after midnight to significant flooding. Rawlings testified he first notified Bradford of the flooding on March 1, 2022, at a time when the rent was paid and the time for making the March payment had not passed. Rawlings testified that he "paid $1,055" for March rent, and Bradford did not notify Rawlings and Kennedy that they were behind on their rent. Rawlings discovered "there was a $9 shortage," and he corrected that himself. Thus, there was no evidence Rawlings and Kennedy were "delinquent" in their rent at the time the notice of the water leak was sent. The evidence supports the trial court's finding that appellants "were not delinquent in the

–13–

payment of rent at the time of notice of the water leak condition was given" to Bradford.

The record reflects, and trial court found, that Bradford was not able to repair the demised premises or to provide a substitute apartment. The evidence showed Rawlings and Kennedy lived in a hotel at their own expense for thirteen days, nearly twice the seven-day period that is presumptively a reasonable time to repair or remedy a condition under section 92.056(d). *See* TEX. PROP. CODE § 92.056(d). The evidence further showed the condition of both unit 412 and 414 during the time period between March 1 and March 18. On this record, the trial court did not err in concluding that Bradford was not able to repair or remedy the water leak condition to the apartment demised in the time required by statute.

On this record, we conclude the evidence was legally and factually sufficient to support the trial court's findings that the "material allegations contained in Plaintiffs' Original Petition" were true and ruling in Rawlings and Kennedy's favor on their repair and remedy case under property code sections 92.052 and 92.056 *See Fulgham*, 349 S.W.3d at 157. We overrule Bradford's first issue.

In its second issue, Bradford complains that the trial court erred in awarding Rawlings and Kennedy attorney's fees because the fees were not shown to be reasonable and necessary. We agree.

We review the trial court's decision to grant or deny attorney's fees for an abuse of discretion. *Spector Gadon & Rosen, P.C. v. Sw. Sec., Inc.*, 372 S.W.3d 244,

–14–

251 (Tex. App.—Dallas 2012, no pet.) ("The fixing of a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion."). Legal and factual sufficiency of the evidence are not independent grounds under this standard of review but are relevant factors we may consider in assessing whether the trial court abused its discretion. *Id.*

Section 92.005 of the property code provides that a party who prevails in a suit brought under this subchapter or Subchapter B, E, or F may recover the party's costs of court and reasonable attorney's fees in relation to work reasonably expended. TEX. PROP. CODE ANN. § 92.005. Section 92.056 is in Subchapter B. *Id.* § 92.056.

A claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019) (citations omitted). General, conclusory testimony devoid of any real substance will not support a fee award. *Id.* at 501. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* at 502. Contemporaneous billing records are not required to prove the requested fees

are reasonable and necessary. *Id.* However, billing records are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested. *Id.* Regardless, the proof must be sufficient to permit a court "to perform a meaningful review of [the] fee application." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012).

Here, Rawlings and Kennedy's attorney's testimony, in its entirety, was as follows:

> I am a licensed attorney in the State of Texas. I have an office and practice in Hunt County, Texas. I am familiar with what the reasonable and necessary fees are in cases of this type. I charge $200 per hour. I have a total of 11 hours. I am anticipating that this would take another hour or so today, for attorney's fees of $2,200, which I believe is a reasonable and necessary fee and considering the nature and complexity of the case and the time spent on it.

While counsel's testimony provides "some" evidence, it was general, conclusory, and fails to meet the *Rohrmoos* standard. *See Rohrmoos,* 578 S.W.3d at 498–502. Accordingly, Rawlings and Kennedy presented insufficient evidence to support the requested fee award. *Id.* at 501; *Ferrant v. Lewis Brisbois Bisgaard & Smith, L.L.P.*, No. 05-19-01552-CV, 2021 WL 2963748, at *6 (Tex. App.—Dallas July 14, 2021, no pet.) (mem. op.) (law firm presented insufficient evidence to support fee award where firm offered no testimony or documentary evidence of the specific tasks performed by attorneys and staff or the amount of time spent on specific tasks).

However, property code section 92.005 provided for the recovery of attorney's fees, and Rawlings and Kennedy provided *some* evidence legal services

–16–

were required to prosecute its claims.[4] *See* TEX. PROP. CODE ANN. § 92.005; *Rohrmoos*, 578 S.W.3d at 505–06. When the record lacks the requisite details to support a requested fee award, the appropriate remedy is a remand for further proceedings on the attorney fee request. *Rohrmoos*, 578 S.W.3d at 506; *In re S.W.*, No. 05-20-00582-CV, 2022 WL 2071110, at *3 (Tex. App.—Dallas June 9, 2022, no pet.) (mem. op.) (remanding to trial court for further proceedings on request for attorney's fees where attorney provided some evidence of hourly rates and hours worked on case but did not provide sufficient evidence of the particular services performed, who performed the services, when the services were performed, and a reasonable amount of time required to perform the services); *Ferrant*, 2021 WL 2963748, at *6 (same). Accordingly, we conclude remand to the trial court for a redetermination of Rawlings and Kennedy's attorney's fees through trial is appropriate. *See Rohrmoos*, 578 S.W.3d at 506. We sustain Bradford's second issue.

---

[4] Rawlings and Kennedy filed the repair and remedy case in justice court as self-represented litigants. The record reflects legal counsel appeared for trial de novo after Bradford appealed.

We reverse the trial court's award of attorney's fees and remand to the trial court for a redetermination of Rawlings and Kennedy's attorney's fees through trial. In all other respects, we affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

221298F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BRADFORD PLACE
APARTMENTS, Appellant

No. 05-22-01298-CV     V.

TED RAWLINGS AND CAITLIN
KENNEDY, Appellee

On Appeal from the County Court at
Law No. 2, Hunt County, Texas
Trial Court Cause No. CC2200074.
Opinion delivered by Justice
Goldstein. Justices Molberg and
Pedersen, III participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding attorney's fees to Ted Rawlings and Caitlin Kennedy. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for a redetermination of Rawlings and Kennedy's attorney's fees through trial.

It is **ORDERED** that appellee Ted Rawlings and Caitlin Kennedy recover their costs of this appeal from appellant Bradford Place Apartments.

Judgment entered this 22nd day of August 2024.