**AFFIRMED and Opinion Filed February 15, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00084-CV

## IN THE INTEREST OF K.S.L. AND M.B.L., CHILDREN

**On Appeal from the 469th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-54150-2018**

## MEMORANDUM OPINION
Before Chief Justice Burns, Justice Molberg, and Justice Reichek
Opinion by Justice Reichek

In this appeal from an order in a suit to modify the parent-child relationship, Father asserts the evidence is legally and factually insufficient to support the trial court's rulings on conservatorship, possession, and parental rights and duties. We affirm the trial court's order.

### Background

Mother and Father are the parents of two children: K.S.L. ("Daughter") and M.B.L. ("Son"). Mother and Father were divorced in July 2019. Under the agreed decree, the parties were appointed joint managing conservators of the children with

equal periods of possession. Their rights and duties were also roughly equal, and most decisions concerning the children required agreement of both parents.

On October 6, 2020, Mother filed a petition to modify the parent-child relationship. Mother asserted that Father had engaged in behavior that was abusive to the children and requested, among other things, that Father be allowed only limited, supervised access to the children until he completed a parenting course and it was determined he no longer posed a danger. Father filed a counter-petition on December 29 seeking to be appointed as the person with the exclusive right to designate the children's primary residence and make decisions concerning the children's education and medical and psychiatric treatment. Following a hearing and an interview by the trial court with Daughter in chambers, the court issued temporary orders limiting Father's possession of the children to Wednesdays from 6:00 p.m. to 8:00 p.m., and Saturdays and Sundays from noon to 6:00 p.m.

A final hearing was conducted in April 2021. At the hearing, Mother testified about her concerns. Mother stated Father had problems with anger and that he would engage in profanity laced rants in front of the children. She testified he frequently lost his temper in a way that was frightening to those around him and he was drinking while the children were in his care. The children would sometimes call or text her to come get them when they were with Father and, she stated, Father would regularly become frustrated with the children and return them to her early. She said Father

frequently did not exercise his possession during the summer months, and she sometimes had to force Daughter to spend time with him.

An audio recording was submitted into evidence in which Daughter discussed Father yelling at Son. Daughter said Father was using "that yell," which she described as "really loud" and "gives you chills." When Father was questioned about the police being called to his apartment by a neighbor because of loud yelling, he responded that security was called because the children were making noise in the hallway.

The catalyst for requesting the modification, according to Mother, was an incident that occurred on August 24, 2020. On that evening, Son became upset and started yelling, pushing, and throwing things. Daughter took a video recording that showed Father yelling and pushing Son back. Father then wrapped one of his arms around Son's neck and carried him out of room. Daughter contacted Mother who immediately went to Father's residence. Daughter left with Mother and, while in the car, Mother recorded their conversation. On the recording, Daughter was sobbing and said Father was "such a bad person sometimes." She further said that Father had threatened to take his own life in front of her.

Shortly after the August 24 incident, Mother refused to allow Father to have possession of the children. This continued for a period of several months. Father eventually obtained a court order to enforce the agreed possession schedule and Mother was held in contempt. Mother stated that, when she informed the children

they would need to go with Father that same day, both children cried and were confused.

Mother testified the children's behavior was detrimentally affected by staying with Father and their behavior improved when they stopped spending time with him. She said both children were more agitated after being with Father, and Son was more argumentative and would curse. Son was having issues at school with cursing and bullying. Mother's father ("Grandfather") testified that when Son spent time with Father, Son would become angry, use extremely bad language, and was more likely to get into fights with his sister. Grandfather stated Father had a "much higher level of anger" than other people and he had witnessed Father acting inappropriately at the children's sporting events. He said Father "was critical [on] almost every occasion and not encouraging." When the children stopped seeing Father, Grandfather said they were considerably happier and more engaged and relaxed.

Mother testified she took both children to counselling. Son was receiving counselling for anger issues, and Daughter for anxiety. Both children were also diagnosed with ADHD. Mother stated she attempted to get permission from Father for the children to attend counseling, but he did not respond to her requests. In addition to counselling, Daughter was put on medication for her anxiety. Son's counsellors recommended that Son have limited contact with anyone who "models anger."

Mother stated Daughter was having extreme anxiety issues at school. She stated those issues were alleviated in 2020 when the school transitioned to remote learning due to the pandemic. Because of this, Daughter requested to continue going to school online and Mother enrolled her in an online school. Although Mother believed Father had agreed to Daughter attending online school based on a text she received from Daughter, Father stated he did not approve the enrollment, and Mother was held in contempt for violating the divorce decree's requirement that both parents agree to educational decisions.

Mother stated Daughter was happier at online school. She stated Daughter's stress levels were down and her grades were up. According to Mother, Daughter was receiving A's and B's in the gifted program. Mother said she was exploring options for Daughter for high school that would allow her to have more interaction with her peers, including returning her to in-person school. She said she was discussing all the options with Daughter's teachers and her counsellors to determine what is best for Daughter. She also stated Father did not participate in conferences with Daughter's teachers and counsellors despite being aware they were occurring.

Father stated he disapproved of Daughter attending online school because it "lacks academic rigor." He stated he had seen reports of Daughter receiving failing grades. Mother testified that assignments turned in late will show a failing grade until they are submitted, at which point the grade is adjusted upward. Father further stated that Daughter "needs to be socialized with her peers" and he was concerned

that she did not engage in enough physical activity. He commented that he had "seen her BMI increase[] from ninety-fifth percentile on October 6th to ninety-seventh percentile on the 20th of January." In his opinion, Daughter's mental health had gotten worse since she began remote learning.

Father testified his relationship with the children was severely impacted by Mother withholding custody following the August 24 incident. He said that when he was finally able to see the children again, there was an emotional barrier between them. According to Father, there was no connection between his behavior and the children's attitude towards him. He stated he does not use corporal punishment and he could not remember the last time he swore in front of the children. He also stated he rarely drank alcohol. After taking an online parenting class, Father said he learned only that he was doing a lot of the things that a parent is supposed to be doing, and Mother was not. When questioned about whether he should change his behavior at Son's sporting events, Father stated "There's nothing to change." Regarding his failure to exercise all his possession over the summer, Father stated he was simply trying to be flexible to accommodate the children's schedule and wishes.

Father testified the video recording of the August 24 incident was an accurate depiction of what occurred from Daughter's perspective. When asked if he understood why Daughter was upset by the events of that night, Father responded that he did not. Father's sister ("Aunt"), who was with Father and the children that

night, stated that Son was throwing a tantrum and Father was trying to deescalate the situation. Aunt said Son was in no imminent danger and nothing abusive occurred.

After hearing the testimony, the trial judge interviewed Daughter a second time separately in chambers. No attorneys were present at the interview, and no record of the interview was made.

The trial court signed a memorandum order on May 14 and a final order on October 31, 2021. In the final order, the court made several modifications including granting Mother the exclusive right to designate the children's primary residence within Collin and contiguous counties, and the exclusive right to enroll the children in school and make decisions concerning the children's education after notifying Father. With respect to possession, the court ordered that the schedule put in place by the temporary orders would continue until Father successfully completed family counselling with the children or attended twelve sessions of counselling, whichever is less. Upon providing proof that he fulfilled this requirement, Father's possession of the children would be according to a standard possession schedule.

Father requested the trial court make findings of fact and conclusions of law. Among the findings made by the court were:

    (1) Father rarely took his full periods of possession of the children and if he became unhappy with the children's behavior or attitudes, he would return them to their mother.

    (2) On August 24, 2020 there was an incident of family violence involving Father and Son. This incident was recorded by Daughter.

–7–

Following this incident, Father stated his intention to no longer take possession of the children. And he did not attempt to exercise his possession for some time after the incident.

(3) On multiple occasions, Father behaved inappropriately toward his children. Father berated them, hit them, used profanity in front of them, and drank excessively while in possession of them. The children did not want to spend extended periods of time with Father, or to spend the night at his house. On at least one occasion, a neighbor called the police because Father was yelling at the children and they were crying.

(4) Daughter has diagnosed anxiety and ADHD. She prefers to attend remote school, and her grades and mental health are improved when she does so.

(5) Son has diagnosed ADHD. He was having issues with anger, aggression, and bullying of other children at school, which improved when he spent less time with Father.

(6) The trial court's modification orders are in the best interest of children.

Father filed a motion for new trial that was overruled by operation of law. This appeal followed.

## Analysis

A trial court has broad discretion in family law cases to decide the best interest of the children in matters such as custody, visitation, and possession. *Acosta v. Soto*, 394 S.W.3d 665, 667 (Tex. App.—El Paso 2012, no pet.). When reviewing the trial court's decision, the abuse of discretion standard of review overlaps with traditional sufficiency standards of review. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, pet. denied). As a result, insufficiency of the evidence is not an independent ground of reversible error, but instead constitutes a factor relevant to our assessment

of whether the trial court abused its discretion. *Id.* Using this overlapping analysis, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Id.* If evidence of a substantive and probative character exists to support the decision, there is no abuse of discretion. *Gerges v. Gerges*, 601 S.W.3d 46, 54 (Tex. App.—El Paso 2020, no pet.). Because the trial court is in the best position to observe the witnesses and their demeanor, it is the sole arbiter when assessing credibility. *In re M.M.*, No. 05-21-00992-CV, 2023 WL 179810, at *7 (Tex. App.—Dallas Jan. 13, 2023, no pet. h.) (mem. op.).

Father contends the trial court abused its discretion in limiting his possession of the children to less than standard possession pending his fulfillment of the family counselling requirement. The family code creates a rebuttable presumption that a standard possession schedule is in a child's best interest. TEX. FAM. CODE ANN. § 153.252. The trial court may use a graduated possession schedule, however, where it is shown to be appropriate. *See Peterson v. Kirk*, No. 03-02-00202-CV, 2002 WL 31833710, at *6 (Tex. App.—Austin Dec. 19, 2002, pet. denied) (mem. op., not designated for publication).

The testimony in this case from both Mother and Father indicated that Father's relationship with the children was strained. Although Father blamed this strain on Mother withholding possession, Mother presented evidence showing that it was Father's behavior and his interactions with the children that caused the problems.

This evidence included recordings of Daughter discussing Father's yelling and his threats to commit suicide in front of her.

Both Mother and Grandfather testified that Father had significant anger issues and was prone to loudly ranting in front of the children. Grandfather described Father as highly critical and unsupportive. The evidence showed both children became upset and had difficulty when they stayed with Father, and they were happier and less anxious when they spent less time with him. Mother stated the restricted schedule put in place by the temporary orders was working well for the children, but she was open to Father having more possession if he received counselling.

When questioned about his behavior with children, Father repeatedly testified he saw nothing wrong with his conduct. Father denied he had anger issues or that his conduct was inappropriate. After taking an online parenting class, Father stated he learned only that he was doing things correctly and Mother was not. Father acknowledged, however, that his relationship with the children would benefit from counselling.

Based on the record before it, the trial court could rationally conclude it was in the best interest of the children for Father's periods of possession to be limited until he and the children engaged in family counselling. *See Beaupre v. Beaupre*, 700 S.W.2d 353, 355 (Tex. App.—Fort Worth 1985, writ dism'd) (not an abuse of discretion for trial court to limit visitation until children's relationship with father improved). The court was free to accept Mother's and Grandfather's testimony

regarding Father's behavior and the evidence from Daughter that Father acted inappropriately, threatened to commit suicide in her presence, and was "a bad person sometimes." Although Father suggests the trial court's decision was "arbitrary and speculative" because no expert testimony was offered, he provides no argument and cites no authority to show that expert testimony was required in this case. We conclude the trial court's decision was supported by substantive and probative evidence and was not an abuse of discretion.

This same evidence supports the trial court's decision to modify the divorce decree to remove the equal possession schedule, grant Mother the exclusive right to designate the children's primary residence, and grant Father only standard possession. Father argues that, under the recently enacted family code provision granting expanded possession to possessory conservators residing less than fifty miles from the child's primary residence, the trial court must award him expanded possession unless it concludes there is a history of domestic violence or sexual abuse. *See* TEX. FAM. CODE ANN. § 153.3171(b).[1] Father misreads the statute.

Under section 153.317, a history of family violence or abuse is only one of the grounds upon which the trial court may deny expanded possession. *Id.* The court may also determine that one or more periods of expanded possession are not in the best interest of the children based on the parent not frequently and

---

[1] Section 153.3171 of the Texas Family Code became effective after this case was tried, but before the final judgment was rendered. The section applies to a suit affecting the parent-child relationship that is pending in the trial court on the effective date of the Act.

continuously exercising the rights and duties of a parent or "for any other reason the court finds relevant." *Id.*

The trial court in this case interviewed Daughter concerning her wishes as to conservatorship and possession. Although Father objected to the interview being conducted, he neither requested a transcript of the interview nor objected to the fact that no record was made. Information obtained from interviewing a child in chambers can be used by the court in exercising its discretion in matters pertaining to the children, and we presume the trial court did so here. *See In re Marriage of Comstock*, 639 S.W.3d 118, 135 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

In addition, the trial court heard testimony that Father did not exercise all of his possession over the previous summer and would return the children to Mother early when he found their behavior difficult. Father was unsupportive of Daughter's desire to attend online school despite the fact that he did not attend scheduled conferences with her teachers or meetings with her counsellors. Father was also unresponsive to Mother's requests that he approve counselling for the children. This combined with Father's apparent unwillingness to accept responsibility for the difficulties in his relationship with his children supports the trial court's decision to grant only standard possession. *See In re R.H.H.*, No. 04-09-00325-CV, 2010 WL 2842905, at *6 (Tex. App.—San Antonio July 21, 2010, no pet.) (mem. op.).

Father argues that the trial court's conclusion that he was entitled to standard possession cannot be reconciled with its refusal to grant him expanded possession.

Father appears to argue that if a standard possession schedule is in the children's best interest, there is no basis to conclude an expanded possession schedule is not. We decline to limit the range of the trial court's discretion in this manner. The statute creating the expanded schedule grants the trial court wide latitude to tailor the periods of expanded possession to promote the child's best interest. TEX. FAM. CODE ANN. § 153.3171(b). This includes denying some or all periods of expanded possession. *Id*.

The evidence here showed the children were happier and did better when their time with Father was limited. The trial court had sufficient evidence before it to conclude that, once Father completed counselling, the interests of the children would be best served by expanding possession beyond what was imposed by the temporary orders, but less than the expanded possession schedule available under section 153.3171. *See id.* § 153.193 (limitations on parent's possession may not exceed those required to protect children's best interest).

Father argues the trial court failed to make specific findings to support its denial of expanded possession. Section 153.3171 states that "[o]n request of a party, the court shall make findings of fact and conclusions of law regarding the order under this section." *Id*. § 153.3171(c). The record shows, however, that Father never requested such findings. He requested findings only pursuant to rule 297 of the Texas Rules of Civil Procedure. Nor did Father request additional findings after the trial court filed its original findings of fact and conclusions of law. When a party

fails to timely request additional findings of fact and conclusions of law, it is deemed to have waived the right to complain on appeal of the trial court's failure to enter additional findings. *Barton v. Barton*, 584 S.W.3d 147, 155 (Tex. App.—El Paso 2018, no pet.).

Father's argument addressing the modification to his parental rights and duties consists of a single sentence that he "lost his right to share equally in educational decisions, despite the trial court holding Mother in contempt of four separate violations of the decree in relation to education decisions and despite evidence that the children's education and attendance suffered under the temporary orders when Mother was in charge of educational decisions." The evidence on attendance showed that Son sometimes arrived late to school. Mother stated that many of the instances in which he arrived late were caused by Son not feeling well in the morning and were excused by the school. Of the unexcused late arrivals, Mother said they were usually just a matter of being a minute or two late.

Although Father testified Daughter was receiving lower grades at the online school, Mother disputed this and stated Daughter's grades had improved and she was happier and less stressed in the online school environment. Mother further provided evidence that she was making educational decisions for Daughter based on consultations with Daughter's teachers and counsellors. In contrast, Father opposed Daughter attending online school based largely on his own personal feelings and general information unspecific to Daughter about the challenges posed by an online

education. This evidence is sufficient to support the modification granting Mother the exclusive right to make educational decisions for the children after notifying Father.

Finally, the last section of Father's brief challenges certain of the trial court's findings of fact. When findings are challenged and the appellate record contains a reporter's record, as it does here, findings of fact are not conclusive and are binding only if supported by evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id*. at 158.

Father argues there is no evidence to support several of the trial court's findings including that he hit the children and drank excessively while in possession of them. Even if the evidence did not support these findings, the evidence discussed above was sufficient to support other findings including that Father did not exercise all his periods of possession and acted inappropriately toward the children. The evidence also supports the trial court's findings that the children benefitted from spending less time with Father and from Mother making their educational decisions. *See Zoller v. Zoller*, No. 01-09-00992-CV, 2011 WL 1587358, at *1 n. 2 (Tex. App.—Houston [1st Dist.] April 21, 2011, no pet.) (mem. op.) (complaint of erroneous findings and conclusions considered part of general abuse of discretion challenge where appellant provided no explanation of how claimed erroneous findings and conclusions harmed her or led to error in judgment). We conclude

evidence of a substantive and probative nature supports the trial court's conclusion that the modifications to the divorce decree are in the children's best interest.

We overrule Father's issues and affirm the trial court's order.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

220084F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF K.S.L. AND
M.B.L., CHILDREN

No. 05-22-00084-CV

On Appeal from the 469th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 469-54150-
2018.
Opinion delivered by Justice
Reichek. Chief Justice Burns and
Justice Molberg participating.

In accordance with this Court's opinion of this date, the order of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellee KATHRYN LYSKO recover her costs of this
appeal from appellant MICHAEL LYSKO.

Judgment entered February 15, 2023